**UNITED STATES ex rel. COLTMAN v. BULLOCK.**

**Civ. A. No. 52 C 2091.**

United States District Court
N. D. Illinois, E. D.

Jan. 30, 1953.

128

John Gannon, Chicago, Ill., for relator.

Otto Kerner, Jr., U. S. Atty., Anthony Scariano, Asst. U. S. Atty., Chicago, Ill., for respondent.

PERRY, District Judge.

In this petition for writ of *habeas corpus,* the petitioner seeks release from the custody of the Armed Forces of the United States and from alleged illegal detention by Colonel Stephen E. Bullock, Commanding Officer, Fort Sheridan, Illinois. The petitioner alleges that he is unlawfully detained and deprived of his liberty without due process of law and without his consent by the respondent under alleged color of law "by reason of a certain purported order to report for induction, issued by Local Board No. 98 of the Selective Service System of Cook County, Illinois, located in Evanston, Illinois, on September 26, 1952; that said order to report for induction was entered pursuant and subsequent to a classification of petitioner in Class I–A, notice of which was mailed to petitioner by said local board on September 3, 1952. In substance, the petitioner alleges that he is employed in an essential classification in an industry which is engaged in work defined as critical to the "national health, safety, or interest"; that the Selective Service System, through its local board and board of appeal and though the National Office of the National Director of the Selective Service System, in placing the petitioner in a I–A classification, has acted contrary to its regulations in an arbitrary capricious and discriminatory manner, thereby denying the petitioner's right to be

placed in a deferred classification. The petitioner further alleges that he has pursued all available remedies within the Selective Service System and denies that there is any administrative remedy under the Army Regulations. The respondent denies all material allegations and questions the jurisdiction of the Court on the ground that the petitioner has not exhausted his remedy under Army Regulations.

■ Habeas corpus is an extraordinary writ. It constitutes a collateral attack upon a judgment and it is held that it may not be resorted to until all other available remedies for relief have been exhausted. U. S. v. Sing Tuck, 194 U.S. 161, 24 S.Ct. 621, 48 L.Ed. 917; Ex parte Hawk, 321 U.S. 114, 64 S.Ct. 448, 88 L.Ed. 572; Whelchel v. McDonald, 5 Cir., 176 F.2d 260; McMahan v. Hunter, 10 Cir., 179 F.2d 661. Scrupulous adherence by the federal courts to this doctrine is required. The remedy must be exhausted by the petitioner even if it has been created after he commenced his action in the federal court. Ferguson v. Ragen, 338 U.S. 833, 70 S.Ct. 50, 94 L.Ed. 508; U. S. ex rel. Peters v. Ragen, 7 Cir., 178 F.2d 377. This doctrine has been invoked in those cases which involve a criminal prosecution for violation of the Selective Training and Service Act, where the defendant has sought to attack the validity of a selective service board's decision. Falbo v. United States, 320 U.S. 549, 64 S.Ct. 346, 88 L.Ed. 305; Swaczyk v. United States, 1 Cir., 156 F.2d 17, certiorari denied 329 U.S. 726, 67 S.Ct. 77, 91 L.Ed. 629.

■ In his pleadings, the petitioner alleges that he has exhausted all administrative remedies provided by the Selective Service System. The petitioner, however, is now a member of the Armed Forces and is in the custody and control of the U. S. Army. He makes no showing that he has exhausted the remedies, created by Army Regulation No. 615-365, which was issued by the Department of the Army on October 13, 1952, and which supersedes the Regulation of June 14, 1951. 32 C.F.R. 582.3. This regulation provides as follows:

"3. *Categories for which Authorized*—a. Except as otherwise indicated,

the Secretary of the Army has delegated to the commanders specified in paragraph 14, AR–615–360, the authority to order enlisted personnel discharged or released from the active military service for the convenience of the Government for the following reasons:

"(1) * * *

"(2) To dispose of cases involving an individual's claim that prior to induction he was denied a procedural right as provided by the Universal Military Training and Service Act as amended by the Act 19 June, 1951 (65 Stat. 75; 50 U.S.C.App. Supp. V, 451 et seq., [50 U.S.C.A.Appendix, § 451 et seq.]) and was therefore erroneously inducted. All requests for discharge under this provision will be forwarded to the officer having discharge authority and by him to the Director, Selective Service System, Washington 25, D. C. for his recommendation. The officer having discharge authority will discharge the individual or retain him in the service in accordance with the recommendation made by the Director of Selective Service.

\* \* \* \* \* \*

"4. (4) *National health, safety or interest*—Enlisted personnel may apply for separation from the service on the basis of importance to national health, safety or interest. Application for separation under this provision, with supporting evidence submitted by the enlisted person will be forwarded for final determination direct to the Adjutant General, Department of the Army, Washington 25, D. C. Attn. AGPO–XD, by the commander having discharge authority (see par. 14a, A.R. 615–360). Each application submitted by an individual having an unsatisfied service obligation imposed by the Universal Military Training and Service Act, as amended, will include a statement substantially as follows, signed by the enlisted person concerned; I understand that if this application is approved and I do not carry out the commitments made herein, I will be

subject to the immediate re-entry into active military service."

The petitioner, however, contends that a resort to the administrative remedies, afforded by the Army Regulations, would oppose his position in this case. It is his position that the induction was illegal and a nullity and that he is not properly a member of the Armed Forces. He further contends that his use of the Army Regulations would constitute a waiver on his part to challenge the validity of his induction in a *habeas corpus* proceeding. The Court considers these answers as being inadequate. The remedies provided by the quoted portions of Army Regulation No. 615–365 are designed to grant relief when the action of the selective service board was improper and the induction was illegal. It is one of the necessities of the administration of justice that even fundamental questions should be determined in an orderly way. Where, as in the case before the bar, an effective administrative remedy has been established, the writ will not be employed to summarily by-pass or interrupt such procedure. U. S. v. Sing Tuck, 194 U.S. 161, 168, 24 S.Ct. 621, 48 L.Ed. 917. The Court is unable to apprehend the basis for the statement that the prosecution of the remedy under the army regulation would constitute a waiver of the right to challenge the validity of the action of a selective service board at a judicial hearing. The pursuance of a remedy under Army Regulation No. 615–365 certainly cannot be considered as being consistent with a position that the action of the selective service board is proper and legal. It cannot be said that one, who seeks a release under this military regulation, has acquiesced in the board's action so that he thereby waives any objection to it. As a matter of fact, one who seeks release under this regulation must do so on the ground that the board's action was improper. The petitioner seeks support for his position in the cases of Bronemann v. United States, 8 Cir., 138 F.2d 333 and Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567. Both cases involved criminal prosecutions for violation of the Selective Training and Service Act. In the former, the defendant failed to report for work of national importance; in the latter case, the defendant refused to submit to induction. In both cases, the defendants used all appellate procedures provided by the Selective Service System; these represented the whole of their administrative remedy. In neither case, during the course of the discussion of the propriety of the remedy of *habeas corpus,* has there been any judicial repeal of the fundamental jurisdictional requirement in this type of action, namely, the exhaustion of all other available remedies. On the contrary, the latter case repeats this principle of law with approval insofar as a judicial review of an administrative determination is involved. Estep v. United States, 327 U.S. 114, 123, 66 S.Ct. 423, 90 L.Ed. 567.

Since it is clear that the petitioner has not exhausted his remedy under Army Regulation No. 615–365, it is the view of this Court that it has no jurisdiction. The Court, however, will not rest its decision upon the jurisdictional basis alone.

The petitioner's selective service file reflects that he was classified I–A, which means available for military duty, on June 6, 1950, by his local board. Thereafter, on June 18, 1950, the petitioner wrote to the Selective Service System at 226 West Jackson Boulevard, Chicago, Illinois, and advised them that he had received notice of his classification. He also expressed a desire for an immediate appointment to discuss this classification with the board for the reason that on January 8, 1946, he had been classified I–C (classification of member of Armed Forces and certain registrants separated therefrom) by Local Board No. 2 in Wilmette, Illinois, having served with the Merchant Marine from October 4, 1944 to December 28, 1945.

On July 28, 1950, the Republic Molding Corporation of Chicago, Illinois, directed a letter to the board, signed by Carroll J. Lord, treasurer and director and James W. Crawford, director, wherein it advised that the petitioner was employed as vice president and general manager. It also stated that this corporation was engaged in certain government work. The letter also summarized the petitioner's service with

the Merchant Marine. As the petitioner's employer, this corporation requested a deferment for him.

On August 22, 1950, the petitioner submitted in his handwriting a completed and signed S.S.S. Form No. 100, commonly referred to as the "Classification Questionnaire". This document reflects that he was born on September 29, 1926. He recites his service in the U. S. Maritime Service from December 19, 1944 to January 8, 1946, when he received an honorable discharge. During this period, he was also a cadet midshipman at Kings Point, Long Island. He indicates that he is single and has no dependents. The petitioner reports that as of January, 1947, and earlier he was employed by his present employer, the Republic Molding Corporation, which is engaged in the business of designing and molding plastic products. In May, 1949, he assumed the duties of "Vice President and Gen. Mgr. in charge of all operations and development and engineering—including present time work for government development." In August of 1950, he worked an average of 60 hours per week at a salary of $100. He lists engineering as prior work experience. The petitioner also states that he completed eight years of elementary school as well as four years of high school. He also attended Northwestern University at Evanston, Illinois, for four years at the end of which he was awarded a Bachelor of Science degree in chemistry and production engineering. Under the caption "Registrant's Statement Regarding Classification", the petitioner states that, in his opinion, his classification should be IV-A, which is reserved for those registrants who have completed honorable service in the Armed Forces. Selective Service Regulations, Section 1622-40. The basis for this opinion is recited by the petitioner as follows: "13 mo. military service with 8 mo. overseas duty with award of 3 combat area ribbons —plus present employment work on government contracts." The questionnaire also reflects that the petitioner is an American citizen, that he has no court record, and that he is in good physical condition.

This questionnaire was enclosed in a letter from the Republic Molding Corporation, signed by Carroll J. Lord and James W. Crawford, to the Local Selective Service Board No. 98 on August 22, 1950. This letter advised that additional military work had been taken on, and more was being considered. The services of the petitioner were termed essential for this work.

On October 6, 1950, the petitioner appeared before the local board, and there is a notation in the minutes of actions by the local board that there would be no change in the classification until further information was presented to it.

Such further information was presented to the board by the registrant in the form of a letter dated October 11, 1950, in which the registrant represented that he was general manager and had complete charge of all operations of the Republic Molding Corporation. The registrant further stated that this corporation was engaged in critical war work, which was outlined to the draft board in detail. The letter was accompanied by another, dated October 13, 1950, and signed by the treasurer of the Republic Molding Corporation, Carroll J. Lord, in which the registrant's statements were confirmed.

Thereafter, on November 9, 1950, the registrant was again classified I-A, and he was duly notified on November 13, 1950. The Republic Molding Corporation, on November 16, 1950, requested an oral hearing before the local draft board. On November 30, 1950, the registrant was given a 60-day deferment, during which time he was classified II-A, deferred because of civilian occupation, until February 21, 1951.

On January 4, 1951, Bertram William Coltman, Sr., the registrant's father, directed a letter to Colonel Paul G. Armstrong, State Director of the Selective Service System, wherein he asked for an appointment with the Director. He also emphasized the fact that the corporation was continuing operations in essential war work. The father also attached photo-

static copies of the petitioner's service documents.

On January 9, 1951, the State Director sent his reply to the father. In this letter, he advised the father that members of the Merchant Marine were not considered as veterans; they are not exempt under the law as passed by Congress. He further advised the father that the question of the petitioner's essentiality was to be determined by the local board. The state office does not classify registrants and it would not intervene in the petitioner's case. He further informed the father as to the petitioner's appellate remedies in the event of a reclassification into I–A. The letter closed in the following manner:

"Under present law, with a very limited number of men available for military service, namely, only the single non-veterans physically qualified for military service under 26 years of age, there are few deferments being given. The statement of Carl Vinson of the House Military Affairs Committee indicates that he will request that even the present tight restrictions on deferment be restricted even more if we are to build the force of the nation to a point where we may reasonably expect to be able to defend ourselves. I do not see where it is going to be possible to do anything other than withdraw present deferments to accomplish the job set up by the Congress. I do not want to be arbitrary. My time is very limited, and if this letter is not enough indication that this office will not intervene in the matter, I will be glad to discuss the matter briefly with you. At the moment I can offer no particular encouragement to you."

On February 7, 1951, the petitioner's father was sent a letter from Col. Armstrong, advising the father that Brig. Gen. Louis H. Renfrow, National Deputy Director of the Selective Service System, had visited the state offices and had surrendered the father's correspondence, which had been filed with the National Headquarters of the Selective Service System. This correspondence, dated December 8, 1950, set out the position of the petitioner in the Republic Molding Corporation and complained of the action of Local Board No. 98 in reclassifying the petitioner from I–C to I–A. The petitioner's service documents had also been forwarded to Washington, D. C. by the father. Col. Armstrong had these papers placed in the petitioner's selective service file. Once again, the State Director advised the father of the petitioner's appellate remedies within the Selective Service System, and also emphasized the fact that the petitioner would have no further appeal should the appeal board affirm the classification of the local board unanimously.

On February 8, 1951, Brigadier General Louis H. Renfrow, Deputy Director, National Headquarters, Selective Service System, wrote to the father of the petitioner, advising that he had discussed the case of his son with the State Director, and that they had come to the conclusion that in view of the fact that the son's hearing before the local board regarding his classification was set for February 21, "no action should or could be taken prior to the action of the local board." The father was further advised that if there was dissatisfaction with the classification, there could be recourse to an appeal, and if the appeal in turn was not satisfactory, the matter should then be discussed with the State Director. "This process," wrote Brig. General Renfrow, "of Selective Service must be followed if we are to have an orderly withdrawal of manpower. I am sure that you as an attorney can fully understand and appreciate why this is necessary."

On February 9, 1951, the father of the petitioner, in response to the State Director's letter of February 7, 1951, requested a conference with the State Director.

On February 20, 1951, the Republic Molding Corporation forwarded to Local Board No. 98 of Evanston its petition for the indefinite or extended deferment of the petitioner. The petition represented the corporation as a war industry, which was organized in January, 1946, and which, at

that time, employed 100 people. It itemized all current war contracts as well as those under consideration. It set out the petitioner's service record in the Merchant Marine. It represented the petitioner as the sole operating head, who could not be replaced and whose induction into the Armed Forces would necessarily force the cancellation of all existing war contracts as well as negotiations for future contracts and the termination of all operations of the corporation. This petition was supported by eleven affidavits. Seven representatives of other corporations stated in their affidavits that they knew the petitioner as the sole operating head of this corporation, that it was difficult to replace a man of his training, that it would require four to five years to train a person in order to replace the petitioner. The three directors of this corporation, Carroll J. Lord, James W. Crawford and Bertram Wm. Coltman, Sr., who is also president, gave affidavits wherein they stated that they were not active in the corporate management and that the petitioner was the sole operating head. They further stated that the corporation was engaged in war work, that it was about to assume additional war contracts, that the petitioner could not be replaced, and that his induction would force the cancellation of all war work and the termination of all corporate operations.

On March 8, 1951, after the hearing of February 21, 1951, the petitioner was classified I-A once more. SSS Form No. 110 was mailed to him on March 9, 1951. By a letter of March 15, 1951, the Republic Molding Corporation requested a personal appearance before the board. By letter of March 16, 1951, the board advised the corporation that it had several appearances before the board, that it was the board's opinion that another appearance was unnecessary, that the petitioner would be included in the next "Preinduction physical," and that if the petitioner were found acceptable the corporation could appeal the case. On March 19, 1951, the board mailed to the petitioner SSS Form No. 223, whereby it ordered him to report for the Armed Forces physical examination on April 11, 1951. On March 22, 1951, a further hearing was granted before the board at which the registrant and his father appeared. There appears this notation in the file, dated March 22, 1951, and initialed by the members of the board:

"Father appeared with son. Hearing granted. The opinion of the Board is that this is a family holding company carried on in order to keep boy from Service. The Board has given this great consideration and feels this boy is not essential."

On April 3, 1951, the petitioner appealed from his I-A classification, urging his essentiality in a war industry and his prior service in the Merchant Marine as grounds for the appeal. On April 20, 1951, Local Board No. 98 mailed the petitioner Form No. D D 62, whereby he was notified that he was found acceptable for service in the Armed Forces. On June 6, 1951, he was classified II-A until December 6, 1951, by the appeal board.

By a letter, dated December 3, 1951, and signed by Carroll J. Lord, the Republic Molding Corporation requested Local Board No. 98 to continue the petitioner in the deferred classification of II-A. The essentiality of the petitioner, the difficulty of his replacement, and his previous Merchant Marine service were repeated. It was also pointed out that the defense work had increased very substantially during the previous months.

On January 17, 1952, the petitioner was re-classified by his local board from II-A to I-A. Notice of this reclassification was duly mailed on January 18, 1952. On January 23, 1952, the petitioner requested a personal appearance before the board. On January 25, 1952, the petitioner supplemented his letter of January 23, 1952, to the local board, stating:

"This letter constitutes a written notice of appeal by me from a change of my classification from II-A to I-A, according to the notice from you dated January 18, 1952. At the hearing I shall submit additional evidence bearing on my right to deferment."

The requested hearing was granted for February 14, 1952. On February 1, 1952,

the petitioner was mailed SSS Form No. 223, whereby he was ordered to report for an Armed Forces physical examination on February 26, 1952.

By a letter, dated February 8, 1952, and signed by Carroll J. Lord and J. W. Crawford, the Republic Molding Corporation requested a deferment for the petitioner. The fact that this industry was engaged in critical defense work, the petitioner's training and essentiality to the corporation without whom it could not continue to operate, and the difficulty of his replacement were stressed in this letter.

On February 14, 1952, a hearing was granted the petitioner before the local board and he was continued in a I–A classification. The following memorandum appears in the petitioner's selective service file:

"2/14/52.

"Hearing granted.

"I feel that the registrant in question, Bertram W. Coltman, Jr., is actually the managing director of the Republic Molding Corporation and as such is indispensable to this particular business.

"This business does about one and one half million dollars per year of which 50% is war work on contracts as submitted.

"I do not believe this man is making any effort to replace himself but, nevertheless, I feel he is entitled to a II–A deferment.

"s/ F. N. Remien."

On February 18, 1952, the petitioner's file was forwarded to the appeal board by Local Board No. 98. On February 25, 1952, petitioner submitted a document which he labelled "Appeal." He specifically set out the fact that he was appealing the action of Local Board No. 98 on February 15, 1952, whereby he was classified I–A. He repeated an account of his previous service with the Merchant Marines. He further set out the fact that he was then employed as vice president and general manager of the Republic Molding Corporation of Chicago, Illinois, and that he worked for this company since it was organized in January 1946. The petitioner represented himself as sole operating head of this company. He further emphasized the fact that this company was engaged in critical war work. Details of his educational background and of his duties with the company were outlined. He further stated that the corporation was encountering great difficulty in replacing him and that his imminent induction in the Armed Forces would probably result in the discontinuation of all corporate activities. Carroll J. Lord, treasurer and director, joined in the petitioner's request for deferment and re-classification on behalf of the corporation, and the petitioner also enclosed two letters from individuals who are strangers to the corporation. These letters emphasized the fact that the petitioner was the sole operating head of the Republic Molding Corporation and that it would be extremely difficult to replace him. Local Board No. 98 forwarded this additional information to the appeal board on February 25, 1952.

On April 3, 1952, the Appeal Board sustained the I–A classification by a unanimous vote of 4 to 0. Proper notification was given to the petitioner and his employer. On April 10, 1952, the registrant was ordered to report for induction on April 28, 1952.

On April 14, 1952, the petitioner filed his presidential appeal with the Local Board No. 98 basing "this Appeal upon facts already set forth in the papers of record and also upon facts to be set forth in supporting papers to be filed by me as soon as possible." The Republic Molding Corporation, through Carroll J. Lord, director, concurred in this action. On April 16, 1952, the officials of Local Board No. 98 telephoned Mr. Felt, State Deputy Director, who informed them that they would not be required to consider the presidential appeal. (Under Selective Service Regulations 1627.3 there is no presidential appeal from the unanimous action of an appeal board.) On April 16, 1952, the petitioner was advised of this fact by a letter from Local Board No. 98. A copy of this letter was sent to the Republic Molding Corporation.

During the week prior to Monday, April 14, 1952, Colonel Brown of the Manpower Division, who is stationed at the National Headquarters of the Selective Service System, telephoned Mr. Felt, Deputy State Director, regarding the case of the petitioner. In response to that telephone call, Mr. Felt wrote the following letter to the National Headquarters on April 14, 1952:

"Re: Coltman, Bertram William
"SS #11-98-26-115
14 April 1952

"EHF:mg

"Major General Lewis B. Hershey
"National Director SSS
"1712 G Street, Northwest
"Washington 25, D. C.

"Attention: Colonel Brown
Manpower Division

"Dear Colonel Brown:

"After receiving your telephone call of last week, I requested the file in the above case and I have reviewed it. I have also called the secretary of the board and I have an opinion from him. These are the facts.

"This registrant was originally registered under the 1940 Act and served in the Merchant Marine from October —1944 until December 28, 1945. He was originally classified in I-A by his local board on 16 October 1944, and on October 30, was postponed from induction. According to the record as furnished us by the Merchant Marine and the Navy, the registrant was appointed to the U. S. M. M. A. Kings Point, Long Island, New York, and at that time he was appointed Midshipman, USNR. He was on inactive duty in the Naval Reserve until the time he resigned from the Merchant Marine, at which time he was resigned as a United States Naval Reservist.

"A perusal of his Questionnaire shows that he had completed one quarter at Northwestern University in Pre-Engineering at the time of his entrance into the service. At the same time, he included in his Questionnaire the fact that he was working as a laborer—packing and shipping Army supplies overseas at a weekly wage of $50.00. This would indicate that he was doing full-time work at the same time he was going to school. At the time of completing this information, he also filled out Series XIII, saying he was a Cadet Midshipman in the Merchant Marine Academy.

"A review of the registrant's file under the 1948 Act indicates that Mr. Coltman wsa sent a Questionnaire in August 1950. At that time he indicated he was discharged from the Merchant Marine on January 8, 1946. The record then indicates that he attended Northwestern University for four years and was graduated with a Bachelor of Science degree in Chemistry— Production Engineering. It is indicated that this degree was conferred on him in 1949 or 1950, although not stated in the Questionnaire. The Questionnaire also indicates that he worked three years at his present trade. The board is a little bit concerned as to statements like this because Mr. Coltman did not get out of the service until January 1946, after which he was required to put in approximately four years at Northwestern University studying Engineering, which would bring him up to 1949 or 1950, and not include three years' service at his present occupation.

"There is supporting evidence from the firm as to the necessity of his employment and the urgency of the material which they are producing in the field of plastics. They have supplied a great amount of plastics for the Quartermaster Corps in the form of mess kits and equipment and they have supplied munition parts for the Arsenal at Joliet and Picatinny. The board recognizes these facts but is of the opinion that if his firm is not in a position to continue manufacturing after he is withdrawn, there are other plastic manufacturing companies that could accomplish the same service for the Government. The secretary of the board advised me that the company does about one and one half million dollars worth of business per year, of which 50% is war work. It is the conviction of the board that the firm is not mak-

ing an honest effort to replace the registrant, although statements from the DuPont Company, as well as the Society of the Plastics Industry indicate that the problem is very difficult to accomplish.

"According to information furnished me by the board, the father of the registrant, who is a lawyer, has as clients more than one plastic manufacturing concern. Trained employees of some of the firms he represents were originally acquired by Republic Molding Corporation to start the business, which apparently was started in about 1947, and it is the opinion of the board that these same persons could carry on the business while Bertram W. Coltman, Jr., was in the service.

"As you will note, there are several contradictory facts which, when put together, give the board the feeling that the registrant is not willing to do his part toward his Country.

"One additional point to be considered is the fact that Mr. Coltman has claimed deferment as a veteran because of service in the Merchant Marine, and as late as 1952 claims a military record.

"The registrant took an appeal on February 18, after having been classified in I–A on January 17, 1952 by the local board. On April 3, the Appeal Board classified the registrant I–A by a vote of 4–0. On April 10, the registrant was ordered to report for induction on the 28th day of April.

"We are holding this file at this office until you have had time to read this letter and then, without advice from you, the file will be returned to the local board with the instruction to carry out the induction as ordered.

"For the State Director:
"Edwin H. Felt
"Deputy State Director"

On April 16, 1952, the officials of Local Board No. 98 received a telephonic request from Mr. Felt to cancel the petitioner's induction notice, which had been mailed to him on April 10, 1952. On April 17, 1952, the National Headquarters of the Selective Service System addressed a telegram to the State Headquarters, requesting that the Local Board No. 98 reopen and reconsider the petitioner's classification. It is important to note that at the time of this request the National Headquarters did not have possession of the selective service file; it was still in the possession of Mr. Felt of State Headquarters. On April 24, 1952, the officials of Local Board No. 98 advised the petitioner by letter that his induction notice for April 28, 1952, had been temporarily cancelled by instructions from State Headquarters.

On May 7, 1952, the State Director, by a letter to the local board, directed that the petitioner's classification be reopened and reconsidered. State Headquarters returned the petitioner's selective service file, together with two files of additional information.

This additional information consisted of supporting papers to accompany the presidential appeal, as well as photographs and affidavits. The petitioner's selective service file does not indicate why these documents, although addressed to Local Board No. 98 were filed with the State Director rather than the local board as required by Selective Service Regulation 1627.4. According to the petitioner's "Amendment to Petition" and his brief, however, the petitioner and his employer appeared before the National Headquarters of the Selective Service System on April 17, 1952, and were heard by the National Deputy Director, General Renfrow, who had been advised of the petitioner's contemplated trip for approximately a week in advance. At this conference, General Renfrow read these "Supporting Papers to accompany Presidential Appeal." General Renfrow directed that these papers be filed with the State Director; the petitioner complied on April 21, 1952. The supporting papers outlined the activity of the Republic Molding Corporation in critical war work and refers specifically to difficult assignments for the Quartermaster Corps. These papers set out the manner whereby the petitioner solved several difficult problems in the plastic manufacturing art. It was also reported that the molding products requested by the Quartermaster Corps could not be manufactured according to the con-

ventional methods of molding. Consequently, the corporation spent approximately $178,000 for new machinery to be used solely for this work. He represented that his induction would force cancellation of war contracts and the termination of corporate activities. Once again, petitioner advances a short history of his service with the Merchant Marine. The three affidavits, given by Carroll J. Lord, Doctor James W. Crawford and Bertram William Coltman, Sr., stated the fact that the petitioner is the sole operating end of this corporation, that they had been unable to find a replacement for him, and that his induction would bring about the cancellation of all war contracts and the termination of corporate activity. "Petitioner's Appendix" outlined his services with the Merchant Marine, his current income of $8,000 plus bonus per year, and the fact that on April 3, 1951, when his first appeal was being taken, he reported that he began to train a person as a replacement for himself and that this person was eventually inducted into the Armed Forces. Further this appendix reports that the corporation employed between 130 and 140 employees with an annual payroll of more than $500,000.

On May 9, 1952, the officials of Local Board No. 98 wrote to the State Headquarters as follows:

"Re: Coltman, Jr.,
  "Bertram William
    "SS # 11 98 26 115
"File: POA :RJT :mg
    "May 9, 1952
"Col. Paul G. Armstrong,
"Selective Service System,
"523 Plymouth Ct.,
"Chicago, Ill.
"Dear Sir:
"Pursuant to the instructions contained in your letter of May 7, 1952, directing the board under section 1625.3(a) to reopen and consider anew the classification of the above named registrant, the board has no additional information other than that which it previously classified the registrant 1–A and the Appeal Board unanimously classified the registrant 1–A.
"The board feels that it would be very

helpful if you would care to submit to the board any additional information which induced you to direct the reopening of the case and cancellation of Induction.
    "Yours very truly,
    "For the Local Board Members

    _____
    Clerk Local Bd.   #98
    "Dictated by:
"Ralph M. Snyder
"Gov't. Appeal Agent"

On May 14, 1952, the State Director informed the officials of Local Board No. 98 that the two separate folders of information which had been forwarded to the local board were considered to be additional information. Once again the local board was directed to reopen and reconsider the petitioner's classification.

On May 22, 1952, the State Director ordered that there be sent to him the petitioner's cover sheets and file for review. This was done on the same day by delivering this material to Major Martin, who is a representative of the State Director.

On the same day, namely, May 22, 1952, Major Martin sat in on a meeting of the local board, at which meeting the board discussed the order of the State Director to reopen and reconsider the petitioner's case. Major Martin on May 23, 1952, wrote a report of what he had observed and heard at this meeting and gave it to the State Director, Colonel Paul G. Armstrong. The report follows in full:

                "23 May 1952
  "To:      Colonel Paul G. Armstrong,
                Director
  "From:    Major P. N. Martin
  "Subject: Bertram William
                Coltman, Jr.
"1.   The undersigned Officer met with the Board Members of Cook County Local Board #98, Evanston, Illinois, Thursday, May 22, 1952 at 7:00 P. M. Members present.
        "Harold R. Odh, Chairman
        "F. Henry Remien, Secretary
        "George Prasinos
        "Sam Shure
        "Arthur C. F. Gedge
        "Ralph Snyder, G.A.A.

"2. The subject of Bertram William Coltman, Jr., S.S. #11–98–26–115 was the first order of business that the local board wanted to dispose of, as they had other hearings and did not wish to have those sitting in the other room hear the discussion. Two of the members strongly resented the fact that they were asked by State Headquarters to reopen the case, but I am now confident that we will encounter no difficulty if we request the reopening of the case at a later date.

"3. The Board Members were unanimous in expressing their desire to withhold the reopening of the case until after the State Director has had an opportunity to take the file attached hereto to Washington, May 25th, as they have full confidence in him, especially after having explained to them that the Director was in full accord with their thinking with reference to this case.

"4. Mr. Odh then stated that the Local Board was incensed because the father of the registrant made the statement that he was going to keep his son out of the army regardless of regulations or anyone connected with Selective Service.

"5. From the discussion that went on it is my opinion that the board believes there is considerable pressure brought about on this case by outside influence and expect a Presidential Appeal to be taken on this case as a final out, but, as stated above, upon the Director's return from Washington and advice from National Headquarters that if they are requested to reopen the case on the strength of new evidence presented, which in their opinion, is nothing but a repetition of previous evidence, they will go along with our recommendation. The Chairman did mention that if some favorable action was not taken by National Headquarters in connection with this case that there would be unfavorable publicity from outside sources; I immediately corrected the Chairman by stating

that it was not my desire in any way to mention to them what they can or should do, but if by chance any information was given to an outside source with reference to this case, they would be violating the oath which they took to protect confidential information in any file which comes under their jurisdiction. After mentioning this, this particular Board Member was most agreeable to go along with any request of the State Director.

"6. As stated above the Board wishes to withhold any action until after the Director's return from Washington with information as to National Headquarters' opinion.

"7. The Meeting adjourned about 9:30 P. M. with everyone in a happy state of mind.

"P. N. Martin
"Major, C. E."

On May 23, 1952, the chairman of the Local Board, in behalf of the local board members, wrote the following letter to Colonel Paul G. Armstrong, State Director of the Selective Service System:

"Re: Bertram W. Coltman, Jr.
"S.S. No 11 98 26 115
"May 23, 1952
"Colonel Paul G. Armstrong,
"Selective Service System,
"523 Plymouth Court
"Chicago, Illinois.
"Dear Colonel Armstrong:

"The file of the above registrant has been reviewed by the Local Board together with the information submitted by your headquarters as new information on which to base a reopening of the registrant's classification. The Local Board does not feel this is new information and therefore they do not feel that this warrants a reopening of the case.

"There is considerable feeling among the board members regarding this case as they have expended a lot of time and effort to make a just decision. The registrant and his father were given every legal right and courtesy that

could be extended to them. During an appearance before the Local Board the registrant's father stated that "he would see to it that they did not get his boy into the army." This statement was made in the presence of three of four members. The Local Board's classification of 1–A was upheld by the Appeal Board by a unanimous vote.

"The case is causing embarrassment to the Local Board members and they feel there is no need for a Local Board if their decisions can so easily be set aside.

"Very truly yours,
"For the Local Board Members

"Chairman-Local Board No. 98"

On June 5, 1952, Colonel Lewis F. Kosch, Chief of the Manpower Division, National Headquarters, Selective Service System, wrote to the State Director of Selective Service and advised him that he was returning the cover sheets and file of the petitioner. He further informed the State Director:

"The evidence of record in this case has been very carefully considered and it has been determined that the facts do not warrant the noting of an Appeal to the President by the Director. Such determination, of course, negates the request contained in our telegram dated April 17, 1952, that the Local Board reopen and consider anew Mr. Coltman's classification."

This is the first indication that National Headquarters had examined the petitioner's selective service file. At any rate, this could not have been done before May 22, 1952, when the local board delivered this material to the State Headquarters.

On June 10, 1952, the State Headquarters, in turn, advised the local board that it was returning the file of the petitioner and the letter continues:

"This file has been reviewed both at State Headquarters and at National; and National Headquarters is of the opinion that there need be no further classification action by the Local Board.

This is evidenced in copy of letter dated 5 June 1952, from National Headquarters, which copy is attached hereto."

"Since the file has been reviewed by National Headquarters and State Headquarters and neither National Headquarters nor State Headquarters recommend any further action in the case the Local Board need not again reopen and reconsider this classification; and the classification of I–A made by the Local Board on 17 January, 1952, is considered proper and still in effect."

"The Local Board should, therefore, continue the processing of this registrant for induction on the first call for which he is available. The Local Board need not consider the registrant's age, since he has had a II–A classification since 19 June, 1951, and his liability for induction is therefore, extended to age thirty-five.

"Very truly yours,
"For State Director
"/S/ R. J. Turnbull
"Major, C. E."

"encl."

On June 11, 1952, petitioner was ordered to report for induction on 27th of June, 1952. On June 12, 1952, the petitioner and his father appeared before the board in a nonscheduled appearance and they asked that the case be reopened, which request the local board denied. A memorandum under the date of June 12, 1952, appears in the regular file with a notation that the father denied making a remark about keeping his son out of the Army. The notation states further that members Gedge, Shure and Odh state "that he did make this remark." The memorandum is initialed by five board members. On June 18, 1952, the registrant was advised by letter that his induction which had been scheduled for June 27, 1952, had been postponed until further notice. On June 27, 1952, Local Board No. 98 forwarded, in accordance with instructions, the petitioner's selective service file to State Headquarters.

On June 25, 1952, the State Director wrote to Major General Lewis B. Hershey, National Director of Selective Service, and advised that he was returning the registrant's file for the Major General's further consideration, in accordance with instructions from Colonel Brown of National Headquarters. The letter also outlined the history of the case. Included in the letter were the personal opinion and comments of the State Director, which were asked for by the National Headquarters.

On June 26, 1952, the State Director again wrote a letter addressed to the personal attention of Major General Hershey, National Headquarters, enclosing a copy of a memorandum prepared by Deputy State Director Edwin H. Felt, which memorandum supplemented the contents contained in the State Director's letters to the General. The State Director pleaded that the National Director, Major General Hershey, give the case his personal consideration.

An affidavit of the registrant's father, dated June 16, 1952, and an affidavit of the registrant under the same date, which affidavits were notarized by a District of Columbia notary public, inasmuch as the affidavits were executed in that locality, were filed with National Headquarters of the Selective Service System. These affidavits denied that the father of the registrant ever made any statement to the effect that he was going to keep his son out of the Army, and the affidavits review incidents which are alleged to have occurred during an appearance before the local board by the father. The affidavits were forwarded by National Headquarters of the Selective Service System to the State Director with the comment that "the local board members should be apprised of the contents of these affidavits, thus affording them the opportunity of taking the action necessary to bring the record up to date." National Headquarters requested that the affidavits be made a part of the registrant's file and "when the local board has taken whatever action is deemed to be appropriate, the expeditious return of the entire file to this headquarters for further review will be appreciated."

On July 11, 1952, the State Director returned the file of the registrant to the local board with the request that the local board review the added information, that is, the affidavits regarding the remark of the father, and the accompanying letters of the National Headquarters, and "make such statements as the board members consider appropriate in the case, and return the complete file, with the statement of the local board, to this headquarters in order that we might return the file to National Headquarters for further review."

On August 8, 1952, the board made its statement requested in the State Director's letter of July 11, 1952, reviewing the affidavits of the father regarding the alleged statement about keeping his son out of the Army, and rebuttal was made to these affidavits by the board. The board concluded that it was of the opinion that no evidence had been produced to change the decision of the local board and of the board of appeal. On August 7, 1952, Sam Shure, secretary of the local board, filed the following memorandum in the file of the registrant:

"Chicago, Illinois
"August 7, 1952

"Re: Bertram W. Coltman
"11–98–26–115

"I have personally reviewed this complete file many times and also have gone over the opinion written by Mr. Felt and Colonel Armstrong and I think that this registrant has been given more consideration than any file that I have handled in my ten years with the Selective Service.

"The statement made by Mr. Coltman, Sr., denying the statement he made at the board meeting, I will positively vouch that while the exact words may not have been used, the statement was made.

"While I personally know that Mr. Coltman is a very fine lawyer he tried everything possible to persuade the board to change their opinion.

"Regarding the statement he made that he thought the boy's two years

service in the Merchant Marines should be given consideration—we explained to him that this was against regulations. He also stated that a boy at this age (twenty-five years) is too old to be any good for the Army. We told him that this was none of our business; we were there to act according to regulations.

"I personally believe that with all the consideration and all the reviews that his registrant has had, he is not entitled to any further consideration. I also believe that no further registrants should be inducted by our Board until this case is disposed of.

"We have always given this registrant and his father all the consideration possible, reviewing with him many times and explaining everything that we knew about the regulations.

"This case has been pending for over two years and while we realize it may hurt his business to some extent if the registrant is drafted, we have never seen a case where a concern had to go out of business on account of selective service. We do not feel that the drafting of this boy would hurt the war effort. We have been co-operating with headquarters whenever they asked for the file and we would like to settle this case once and for all.

"/s/ Sam Shure
"Secretary of Board 98"

On August 5, 1952, the petitioner wrote to Brigadier General Louis H. Renfrow, Deputy Director, National Headquarters, Selective Service System, advising him of the character and quantity of certain defense orders placed with his company during the month of July 1952. The petitioner also advised that in order to take this additional work he would have to expand both his floor space and increase his machinery. National Headquarters sent the letter to the State Director, and the State Director included the letter in the registrant's file. On August 28, 1952, National Headquarters wrote the following letter to the State Director:

August 28, 1952

"Registered Mail

"State Director of Selective Service

"523 Plymouth Court

"Chicago, Illinois

"Subject: Bertram William
Coltman, Jr.

"SS No. 11–98–26–115

"Dear Colonel Armstrong:

"Returned herewith is the cover sheet pertaining to the subject named registrant.

"The evidence of record in this case has been very carefully considered and it has been determined that the facts do not warrant the noting of an appeal to the President by the Director.

"There also is enclosed for your information a copy of our letter advising the registrant's father, Mr. Bertram William Coltman, Sr., of this fact and that action by this Headquarters to further stay the induction of his son is not contemplated.

"For the Director
"/s/ Lewis F. Kosch
"Lewis F. Kosch
"Colonel Artillery
"Chief, Manpower Division"

On September 3, 1952, the petitioner was ordered to report for induction on September 26, 1952. Petitioner was inducted upon that day, which was on a Friday. The following Monday, that is, September 29, 1952, the petitioner filed his petition for a writ of habeas corpus against the Commanding Officer at Fort Sheridan, Illinois, his reception center.

The petitioner contends that the actions of the Selective Service System, particularly the local board, were performed in violation of his rights under the regulations and thereby resulted in hearings so basically unfair as to deprive the Selective Service System of jurisdiction of the petitioner. The first of this administrative actions involves the alleged refusal of the members of Local Board No. 98 to accept any further information at the hearing on March 22, 1951. He also points with em-

phasis to the board's memorandum of that date, wherein the Republic Molding Corporation is described as being a family holding company designed to keep the petitioner out of military service, and the alleged absence in the file of any summary of facts tending to support this memorandum. Neither contention can be sustained on several grounds.

Firstly, the petitioner submitted to induction into the Armed Forces pursuant to the Board's order of September 3, 1952, which in turn is founded upon I–A classification made by the local board on January 17, 1952. It is only the validity of this order which is in issue. The petitioner is in no position to contest any administrative determinations prior to this time. Compare Bowles v. United States, 319 U. S. 33, 63 S.Ct. 912, 87 L.Ed. 1194.

Secondly, the petitioner and his father were present at the board meeting on this date merely as a matter of privilege and not of right. Under Selective Service Regulation 1624.1, the petitioner could have exercised his right to appear in person if he had filed a written request within ten days after the local board had mailed the notice of classification on March 9, 1951. This he failed to do. Despite the employer's request of March 15, 1951, for a personal appearance before the board, the registrant's employer has no right to this appearance. Selective Service Regulation 1624.1b. Since neither the petitioner nor his employer had any right to be present at this hearing, it cannot now be claimed that they were denied any procedural rights.

Thirdly, the petitioner perfected his appeal under the Selective Service Regulations and on June 6, 1951, was classified II–A by appeal board. He not only exercised his right to these administrative remedies but also secured a favorable result. Having appealed his case successfully, he cannot now complain of the conduct of the local board. Cramer v. France, 9 Cir., 148 F.2d 801.

Finally, the petitioner complains of the absence of a summary of the facts which, according to his position, should have been filed by the board to support its memoran-

dum of March 22, 1951. It is sufficient to point out that this memorandum was before the appeal board which reclassified him II–A on June 6, 1951. The petitioner having reached a favorable result can point to no prejudice. He is, therefore, in no position to complain of the presence of a memorandum in his file. United States v. Fratrick, 7 Cir., 140 F.2d 5.

The petitioner further alleges that during the course of his personal appearance before the local board on February 14, 1952, he was denied the opportunity to present additional information. It is his position that this deprivation of a right, granted him by the Selective Service Regulations, led to the exclusion of additional evidence from his file and he was thereby prevented from having this information considered by the appeal board. It is his claim that this action was a procedural error, so flagrant as to deprive the Selective Service System of jurisdiction. Even though the Court would concede that the petitioner has correctly described the events at the board hearing of February 14, 1952, his position cannot be sustained.

■■ The validity of an administrative proceeding is not measured by any absolute mathematical standard or formula. Although administrative regulations are designed to promote orderly procedure and a substantially fair hearing for the parties, the Court, in its judicial review, will not insist upon a scrupulous and meticulous compliance with these regulations by the administrative body. Such compliance is indeed desirable, but it is not the single, decisive test. Not every procedural error, but only those so flagrant as to result in an unfair hearing render the proceedings vulnerable in a collateral attack. Eagles v. U. S. ex rel. Samuels, 329 U.S. 304, 67 S.Ct. 313, 91 L.Ed. 308. Judicial approval or disapproval will depend primarily on whether or not the party was granted a substantially fair hearing. The petitioner must show that the proceeding was so unfair as to deprive it of vitality. Eagles v. U. S. ex rel. Samuels, supra.

■■ Selective Service Regulation 1626.-12 provides as follows:

"Statement of Person Appealing.— The person appealing may attach to his appeal a statement specifying the matters in which he believes the local board erred, may direct attention to any information in the registrant's file which he believes the local board has failed to consider or to give sufficient weight, and may set out in full any information which was offered to the local board and which the local board failed or refused to include in the registrant's file."

Selective Service Regulation 1626.24 provides that the appeal board shall receive such "general information concerning economic, industrial and social conditions."

In the instant case, the petitioner requested a personal appearance on January 23, 1952, which was followed by his written notice of appeal on January 25, 1952. At this point, the board, under the regulations, could have immediately processed the case for appeal; it chose, however, to grant the requested appearance on February 14, 1952. On February 25, 1952, the petitioner presented an extended statement of appeal, which was before the appeal board when it affirmed the I–A classification on April 3, 1952. Judging from the diligent manner in which the petitioner prosecuted his claims before the Selective Service System up to this time, the Court can reasonably assume that this additional information was included in his appeal statement, and that thereby it was placed before the appeal board. If this assumption is not correct, however, the petitioner, who prosecuted his appeal to the fullest extent, had a right under the regulations not only to place the additional information, allegedly refused by the local board, before the appeal board but also to insist that this information be considered by appeal board. One cannot acquiesce in an administrative procedural error, alleged to have been committed at a lower level of the proceeding and, after he has failed, during the course of the appellate proceeding, to exercise a right under a regulation designed to cure such alleged error, then claim in the judicial review that he was not accorded a fair hearing. He will be held to have waived the error, if any exists. In the instant case, the petitioner could have well removed the prejudice resulting from the board's alleged refusal to accept additional information by exercising his right under the above-quoted regulation. He filed his statement and had every opportunity to include the additional information therein. It was his responsibility to do so. The Court feels that this view is particularly appropriate in the case before the bar. The petitioner's file readily discloses the active participation of his father, an able lawyer, in the prosecution of his claim for deferment. The petitioner could draw not only upon his paternal guidance but also his recognized legal talent. This is a distinct advantage, not enjoyed by many registrants under the Selective Service System. It is also significant that the petitioner never mentioned the alleged refusal of the local board to accept information in either his "Statement of Appeal" or in his documents, filed in support of his "Presidential Appeal."

■■■■■ The petitioner further claims that he was prejudiced by the Felt memorandum of April 14, 1952, the Major Martin letter of May 23, 1952, and the Colonel Armstrong letters of June 25, 1952, and June 26, 1952. He contends that these letters were placed in his file at later dates and that he never had an opportunity to rebut certain erroneous statements contained therein. He refers primarily to the alleged statement by the father that he would keep his son out of the Army regardless of regulations and the alleged erroneous statement by the board that there are 487 other plastic manufacturers who could perform the work of the Republic Molding Corporation. He further claims that a summary of facts to support these remarks should have been placed in the file by the board members so that he might have an oportunity to rebut them.

The petitioner concedes that none of these memoranda were in his selective service file when the appeal board affirmed the I–A classification unanimously on April 3,

1952. It is obvious then that he could not have been prejudiced when this administrative determination was made. It must be recalled that this determination underlies the order to report for induction, which is the subject of judicial review at the present time.

In view of the unanimous affirmance by the Appeal Board, the petitioner had no further appellate remedy. There is no presidential appeal from unanimous decision of the appeal board. Selective Service Regulation 1627.3. Since the petitioner had no further appellate remedy, he is in no position to state that the contents of these memoranda prejudiced him in any way. Despite the lack of a remedy, these matters, together with the entire record, were considered by the National Headquarters on at least two occasions. During this period, two orders to report for induction were postponed; the petitioner and his father had an opportunity to rebut by way of affidavit certain matters. The fact that the National Director, after a careful review of the entire record, chose not to exercise any of his prerogatives under the regulations cannot be made the subject of a complaint by the petitioner. These prerogatives are rights which are vested solely in the National Director by the regulations. The regulations confer no such right upon any registrant. By way of summary then, one who has no remaining right or remedy cannot claim that an administrative action after the final determination has prejudiced him.

The petitioner also specifies as fatal error the local board's failure to reopen and reconsider in accordance with the National Director's request of April 17, 1952. By virtue of Selective Service Regulation 1625.3, the local board is allowed no discretion in this matter. This refusal avoided a further action of classification, which involves notification and a subsequent right of appeal. The petitioner contends that the board's action deprived him of this further right of appeal.

■ An order to reopen and reconsider is directly related to classification, which is determined solely upon the basis of the registrant's file. Selective Service Regulation 1623.1b. It is not logical to state that the important act of classification be restricted solely to the file but that related and corollary orders may be based on any information. Since classification plays a vital role in the entire administration of the Act, it is reasonable to infer that all administrative determinations leading up to classification are restricted in the same manner. The National Director, as well as the registrants and inferior administrators, is bound by this regulatory restriction.

The record in the instant case shows conclusively that the National Director did not have before him the petitioner's selective service file on April 17, 1952, when the order in question was issued. It was founded upon collateral information, and its issuance was not in accordance with the spirit of the regulations. The Court views this order as one without force or effect. As pointed out earlier, the fact that the National Director did not reissue the order after he considered the entire record is no ground for complaint by the petitioner. The right belongs to the Director and not the petitioner.

■ The petitioner has referred to his presidential appeal. It has already been shown that a registrant has no right of presidential appeal after a unanimous determination by the appeal board. It is also inaccurate, on the part of the petitioner, to refer to alleged orders by the National Director for a presidential appeal. The petitioner's selective service record contains no notice to this effect as required by Selective Service Regulation 1627.1.

As the Court reviews this administrative proceeding in its entirety, it is impressed by the consideration and patience which was exerted by the selective service officials in the processing of this registrant. He was granted privileges, justification for which cannot be found in the regulations. The local board was faced periodically by the petitioner's circumventions and interferences which were initiated in the very early stage of the proceeding. In this respect, the petitioner's activities at the

time of his presidential appeal in April 1952 are very much in point. Needless to say, tolerance of such practices by the higher echelons of the Selective Service System does not tend to promote the orderly and impartial administration of the Act. It is well to remember that "the Act contemplates an administrative organization highly decentralized so as to operate effectively at the local level." Eagles v. U. S. ex rel. Samuels, supra [329 U.S. 304, 67 S.Ct. 318].

Having determined that the actions of the Local Board were not such as to deny the petitioner a fair hearing, the Court must now consider the propriety of the petitioner's classification of January 17, 1952. The petitioner contends that as a matter of right he should have been given a II-A classification.

■■■■ The scope of judicial review of an action by the Selective Service System is limited. In the case of Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 427, 90 L.Ed. 567, the Supreme Court of the United States described this scope of review as follows:

"The provision making the decisions of the local board 'final' means to us that Congress chose not to give administrative action under this Act the customary scope of judicial review which obtains under other statutes. It means that the courts are not to weigh the evidence to determine whether the classification made by the local boards was justified. The decisions of the local boards made in conformity with the regulations are final even though they may be erroneous. The question of jurisdiction of the local board is reached only if there is no basis in fact for the classification which it gave the registrant."

This principle was repeated with approval in Eagles v. U. S. ex rel. Samuels, supra, and in Cox v. United States, 332 U.S. 442, 68 S.Ct. 115, 92 L.Ed. 59. In conducting this review, the Court will not grant a new trial on the issue of classification but will be limited to the Selective Service file. United States ex rel. Hull v. Stalter, 7 Cir.,

151 F.2d 633. Selective Service Regulation 1622.1c provides:

"It is the Local Board's responsibility to decide, subject to appeal, the class in which each registrant shall be placed. Each registrant will be considered as available for military service until his eligibility for deferment or exemption from military service is clearly established to the satisfaction of the Local Board."

It is apparent then that one cannot claim a deferment as a matter of right. It is a privilege which has been granted by Congress and which must be thoroughly established to the satisfaction of the Board. Swaczyk v. United States, supra.

■■ ■■ After a careful examination of the petitioner's selective service record, this Court is of the view that there is a basis in fact for the I-A classification of January 17, 1952. During the course of this review, the Court is aware of the fact that in a selective service proceeding it is incumbent upon a registrant to clearly establish to the satisfaction of the local board that he is eligible for a deferment. The fact that the registrant's evidence stands alone in his selective service record, unimpeached, does not necessarily mean that he has sustained this very heavy burden. It may well be that such evidence, considered by the local board with the balance of the record, is simply not sufficient, in and of itself, to clearly establish the registrant's eligibility for a deferment. It must be remembered that the burden is upon the registrant to demonstrate his eligibility for a deferment and not upon the Selective Service System to show the registrant's eligibility for military service.

In the instant case, the petitioner originally sought deferment solely on the basis of his prior service in the Merchant Marine. Approximately two months later, his employer shifted to a claim for an occupational deferment on the ground that the petitioner's employment was necessary for the maintenance of the national health and interest. One month later, the petitioner stated in his questionnaire that it was his opinion that he should be classified IV-A,

146

which is reserved for those registrants who have completed honorable service in the Armed Forces. Thereafter, throughout the whole administrative proceeding, the petitioner and his employer prosecuted the claim on a double ground. It is reasonable to say that this fact could cast some doubt upon their sincerity in seeking the II–A classification.

As to the essentiality of the production of the Republic Molding Corporation to the maintenance of the national health and interest, the board had before it only the statements of the corporate officers and the petitioner. It also had a list of war contracts, a great number of which call for plastic houseware items to be used at military installations. The fact that a corporation classifies itself as essential to the maintenance of the national health and interest does not necessarily mean that the classification is accurate. It certainly was not incumbent upon the local board to accept such statements as an uncontrovertible fact. There is significantly absent in this record any statement to this effect from a responsible government procurement agency, which, in the Court's view, would be the best if not the only judge, who could determine what industrial activity is essential to the maintenance of the national health and interest.

In this case, the local board was dealing with a man in his mid-twenties with limited industrial experience, who commenced his employment. with the corporation in January 1947 and assumed his executive duties in May 1949. The board could have reasonably doubted, if not rejected, his claim of essentiality and indispensability to the corporation, especially in the light of his own evidence that it would require four to five years to train a replacement.

The board could also have reasonably doubted the petitioner's statements as to the unavailability of a replacement. With the exception of one specific instance, the petitioner's claims in this respect consisted solely of generalities. One could reasonably infer that a serious effort was not being made to secure a replacement.

Finally, the petitioner states that three of his employees, occupying minor positions, had been deferred. This is not pertinent to his classification. A registrant shall be deferred only upon the basis of his individual status. 50 U.S.C.A.Appendix, § 456(h); Selective Service Regulation 1622.20b.

Accordingly, the writ will be discharged and the petition dismissed.