Richard Arlen **BADGER**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 18483.

United States Court of Appeals Ninth Circuit.

Sept. 24, 1963.

Rehearing Denied Nov. 13, 1963.

J. B. Tietz, Los Angeles, Cal., for appellant.

Francis C. Whelan, U. S. Atty., Thomas R. Sheridan, Asst. U. S. Atty., Chief, Criminal Section, Norman T. Ollestad and William D. Keller, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before BARNES and JERTBERG, Circuit Judges, and SWEIGERT, District Judge.

JERTBERG, Circuit Judge.

Appellant was indicted for knowingly failing and neglecting to report for civilian employment contributing to the maintenance of the national health, safety and interest as ordered by his local draft board in lieu of induction,[1] in violation of 50 App.U.S.C. § 462. At the trial of the case to the court, a jury having been waived, the entire selective service file of the appellant was received in evidence. No other evidence was offered by either party. Appellant filed a motion for judgment of acquittal which the District Court denied. The District Court then found appellant guilty of the offense set forth in the indictment, and appellant was sentenced to imprisonment for a term of three years.

Jurisdiction of the District Court was invoked under the provisions of 18 U.S.C. § 3231. Jurisdiction of this Court to review the appeal rests on the provisions of 28 U.S.C. §§ 1291 and 1294.

Appellant seeks reversal of the judgment of conviction on two main grounds:

1. That he was entitled to exemption as a minister of religion and therefore should have been classified as IV–D rather than as I–O (conscientious objector); and

2. That the provisions of the Universal Military Training and Service Act authorizing civilian employment in lieu of induction for persons classified I–O (50 App.U.S.C. § 456(j)), and the corresponding regulation of the Selective Service System (32 C.F.R. § 1660), violate the Thirteenth Amendment of the United States Constitution because such call for "a private, nonfederal labor draft for the performance of services that are not exceptional or related to the national defense" in the absence of a national emergency.

On July 19, 1956, the appellant registered with local Selective Service Board No. 116 in Los Angeles. Shortly thereafter he filed his classification questionnaire and a special form requesting classification as a conscientious objector. On August 5, 1959, appellant was classified I–A by his local draft board. On August 14, 1959, he wrote the local board requesting a hearing regarding his classification and stating "I do not believe I have been

1. Authority for the local board's order rests in 50 App.U.S.C. § 456(j).

properly classified, and would like to discuss this matter with you. I would like to have the opportunity to present evidence of my status." On the same date he addressed a separate letter to his local board which stated, in its entirety, "I, Richard Badger, subject to the right of personal apperance (sic), wish to appeal my classification to the appeal board."

On September 17, 1959, appellant appeared before his local board for a hearing. At that time he submitted a written statement entitled "personal summary" and six letters written by persons familiar with his religious activities. The personal summary submitted at the hearing commences,

"In accordance with section 1624.2 (B) of the Selective Service Regulations I would like to discuss my classification and point out facts that will determine whether my classification should be IV–D or I–O."

Appellant went on to state in his personal summary that he is one of Jehovah's Witnesses and is conscientiously opposed to his personal participation in military service; that since 1948 he has been active in house to house ministry and an active member of the "Theocratic Ministry School"; that he attends five meetings of Jehovah's Witnesses per week and regularly gives talks at such meetings and at ministry school; that he is engaged in a training program in which he accompanies "a more qualified minister" in house to house ministry; that he was formally ordained as a minister in January of 1951;[2] that he devotes 30 to 35 hours per month to the ministry inclusive of meeting attendance, house to house ministry and preparation for talks; that "I am at the present time a part time minister and that my congregation is to be found in the homes of the people"; that he has attended numerous regional, national and international conventions of Jehovah's Witnesses since 1948; that he has conducted Bible studies in people's homes; that the Bible is the basic text-book of his study and preparation for the ministry; that he looks to certain passages in the Bible for an authoritative basis for his conscientious objection to combatant and non-combatant military service; and concluded,

"Because of this religious training and bach ground (sic) I am conscientiously opposed to my partisipation (sic) in both combatant and non-combatant warfare. I trust that this information will be of aid in rendering me my proper classification."

Of the six letters submitted by appellant at the September 17, 1959, hearing, all speak of appellant's sincerity of religious belief and activities; five give estimates of the time which appellant devoted to ministerial duties at that time, all of which correspond with the declaration appellant made in his personal summary; three recommend classification as a conscientious objector; and two of the latter three state that appellant did not qualify for the minister's exemption. Also on September 17, 1959, appellant informed the board, by way of answers written on a questionnaire, that he did not receive pay from his religious organization for his services as a minister; that he was employed during 1959 as a salesman representing Harly Products on a commission basis; that he worked at such job 40 hours per week and had earned from $800.00 to $1,000.00 to date in 1959.

During his personal appearance before the local board on September 17, 1959, appellant stated to the board "I would be satisfied with the I–O classification" and that since he was not a "Pioneer" he didn't believe he had grounds for a IV–D classification. Appellant was informed that he would be reclassified as I–O and that he would have ten days to appeal if he were not satisfied with such classification.

On February 7, 1961, appellant filed a Current Information Questionnaire with his local draft board in which he stated

2. Appellant was twelve years old on that date.

he was presently working as a salesman selling auto supplies to service stations for Harly Products Company, and that he had been employed on this job for the past two years and seven months. On August 18, 1961, pursuant to an order of the local board, appellant reported for a physical examination and was determined acceptable for service. On October 9, 1961, appellant wrote his board informing it of a change of address and of the fact that he was married. On October 19, 1961, appellant was informed by his draft board, in a letter captioned "re: Marital Status", that the board was of the opinion that the reopening or reclassification of his case was not warranted.

On October 26, 1961, the local board offered appellant three types of civilian work in lieu of induction into military service.[3] By letter, appellant replied to the local board that he did not wish to perform any of the types of work offered, and stated:

"My disire (sic) as one of Jehovah's Witnesses is to be recognized as a minister. As such my desire and my intentions are to increase my ministry to a greater capacity. I believe that this is my obligation as a Christian. Therefore I believe that accepting these jobs would interfere with and keep me from attaining such a status.

"I would appreciate it if the Local Board would consider this letter as a request to recognize and accept my ministry as Civilian Work contributing to the maintenence (sic) of the national health and safety of the people.

"I believe that the ministry is the most important civilian work because it contributes to the Spirtual (sic) well being of the community or country. I have been assigned a personal congregation or a personal missionary territory from the Inglewood Congregation of Jehovah's Wittnesses (sic) and would desire to keep myself in a position so that I can fullfill (sic) this desire and obligation."

On January 8, 1962, appellant met with the local board and a representative of the State Director of the Selective Service System in an effort to reach agreement as to the type of civilian service which appellant might perform in lieu of induction. At this meeting, appellant reiterated his objection to his participation in military service and stated: "I desire my classification to be IV–D. I accepted the I–O when I began to understand that I would not get a IV–D. I felt I might get it later. The I–O class was lower but I wanted a IV–D."

During the course of this meeting appellant further stated that he was presently working for his father who was engaged in the business of manufacturing and distributing waxes and polishes to service station owners; that he worked from 30 to 50 hours per week on a commission basis; that he had earned as much as $150.00 per week and his present earnings were $20.00 or $30.00 per week; that he was presently devoting from 20 to 25 hours per week to ministerial work, two to five of which consisted of ministry from house to house; that he desired to know the procedure for obtaining relief from civilian work "for hardship reasons"; that the necessity to aid his father, who had suffered a heart attack, in developing the wax and polish business constituted his hardship; and that if he were engaged in civilian work in lieu of induction he would be able to

---

3. The options offered were:
    1. Institutional helper, County of Los Angeles, Department of Charities, Los Angeles, California, at a salary of $10.72 for an 8 hour day based on a 40 hour week;
    2. Laborer, Orange County General Hospital, Santa Ana, California at a salary of $288.00 to $319.00 per month for a 40 hour week;
    3. Psychiatric technician trainee, Atascadero State Hospital, Atascadero, California, at a salary of $255.00 to $281.00 per month for a 40 hour week.

devote the same amount of time to ministerial work, but that such civilian work would conflict with his activities as a minister in that he wouldn't be able to decide which hours to devote to ministerial duties.

On January 8, 1962, the local board determined that appellant should be assigned to work as an institutional helper at the Los Angeles County Department of Charity. The National Director of Selective Service approved the determination of the local board and on March 5, 1962, appellant was ordered to report to such work on the next day. He did not report at the specified time nor thereafter.

■ Appellant's first contention is that he was improperly classified as I–O for the reasons that: (a) since he had presented to the local board a prima facie case for IV–D classification, it was incumbent upon the board to place adverse evidence in the file as a justification for rejecting his claim; and (b) the board applied improper standards in determining that appellant did not qualify for IV–D classification. We are persuaded by the government's argument that appellant is precluded from attacking his classification because of his failure to exhaust his administrative remedies. Appellant has made no answer to this contention. In Donato v. United States, 302 F.2d 468 (9th Cir. 1962), this Court declared its policy of strict adherence to the rule that administrative remedies must be exhausted in selective service matters, except where the particular circumstances of a case make it an appropriate one for relaxation of the rule. In Donato, the registrant intended to appeal his classification but was engaged in firefighting duty during the period prescribed for appeal and was therefore unable to do so. Appellant has pointed to no circumstance, nor have we found such, which would indicate a relaxation of the rule to be appropriate. Indeed, relaxation of the rule would appear to be singularly inappropriate in light of the circumstances that appellant had set in motion an appeal from his I–A classifica-

tion, but made no attempt to do so after his I–O classification although he was advised twice during the September 17, 1959, meeting of his right to appeal; and that he declared to his board that he would be satisfied with a I–O classification although his personal summary stated he was seeking a determination whether his classification should be IV–D or I–O.

■■ Furthermore, we feel that appellant's contentions are unpersuasive on the merits. Appellant cites Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953) in support of his contention that the local board had a duty to rebut his claim by supplying the file with evidence contrary thereto, and that failure to supply such evidence rendered rejection of his claim arbitrary and unlawful. The Dickinson case points out that local boards are not courts of law bound by traditional rules of evidence and that they are given leeway in hearing and considering a variety of material as evidence. Moreover, the registrant bears the burden of clearly establishing an exemption. Reviewing courts may insist, however, that there be some proof that is incompatible with the registrant's proof of exemption. Therefore, if proof exists in the record before us which is incompatible with appellant's claim, the evidentiary burden of the board is satisfied under the Dickinson case. Such proof will be discussed in connection with appellant's next specification of error.

■ Appellant next contends that the board applied improper legal standards in its denial of his claim for IV–D classification. The record is silent as to what ultimate conclusion may have moved the local board to classify appellant as I–O rather than as IV–D, and appellant's argument merely invites conjecture on our part. It is appellant's surmise that the board's thinking was "preoccupied" with the following matters: the amount of time appellant devoted to ministerial activity; whether or not he was a "Pioneer"; and the presence in the file of statements by his co-religionists that appellant did not qualify for a minister's

exemption. Appellant states that his friends misinterpreted the law in this respect and thus did him a disservice. We may fairly say that the factor common to all of the foregoing matters which appellant deems objectionable is the emphasis given to the amount of time devoted to ministerial activities.

■ In dealing with this specification of error we must bear in mind that our scope of review is limited to the question whether there is any basis in fact for the classification which the local board gave the appellant. Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946); Rogers v. United States, 263 F.2d 283 (9th Cir. 1959). A "basis in fact" for the classification means, of course, one having significance within the legal framework governing selective service classifications. The exemption which appellant claims is granted under the Act to "regular or duly ordained ministers." 50 App.U.S.C. § 456(g). That term is defined in 50 App. U.S.C. § 466(g) and the definition is set out in the margin.[4] In construing these provisions, the Supreme Court in the Dickinson case said, 346 U.S. at 395, 74 S.Ct. at 156, 98 L.Ed. 132:

"Each registrant must satisfy the Act's rigid criteria for the exemp-

tion. Preaching and teaching the principles of one's sect, if performed part-time or half-time, occasionally or irregularly, are insufficient to bring a registrant under § 6(g). These activities must be regularly performed. They must, as the statute reads, comprise the registrant's 'vocation.' "

Thus the amount of time appellant spent in his ministerial duties, particularly in "preaching and teaching the principles" of his sect, would be not only a proper standard for determining his classification, but a crucial one as well.

■ The record indicates that as of September 17, 1959, when appellant met with the local board to review his I–A classification, he was working 40 hours per week as a salesman and was devoting from 30 to 35 hours per month to the ministry. In his personal summary, appellant characterized himself as a "part time minister." We feel that the board could properly decide that appellant was engaged in ministerial activities only part-time and not as a vocation, and therefore did not fall within the statutory definition of "minister", as construed by the Supreme Court in Dickinson.[5]

4. "(1) The term 'duly ordained minister of religion' means a person who has been ordained, in accordance with the ceremonial, ritual, or discipline of a church, religious sect, or organization established on the basis of a community of faith and belief, doctrines and practices of a religious character, to preach and to teach the doctrines of such church, sect, or organization and to administer the rites and ceremonies thereof in public worship, and who *as his regular and customary vocation preaches and teaches* the principles of religion and administers the ordinances of public worship as embodied in the creed or principles of such church, sect, or organization.

"(2) The term 'regular minister of religion' means one who *as his customary vocation preaches and teaches* the principles of religion of a church, a religious sect, or organization of which he is a member, without having been formally ordained as a minister of religion, and

who is recognized by such church, sect, or organization as a regular minister.

"(3) The term 'regular or duly ordained minister of religion' *does not include a person who irregularly or incidentally preaches and teaches* the principles of religion of a church, religious sect, or organization and does not include any person who may have been duly ordained a minister in accordance with the ceremonial, rite, or discipline of a church, religious sect, or organization, but *who does not regularly, as a vocation, teach and preach* the principles of religion and administer the ordinances of public worship as embodied in the creed or principles of his church, sect, or organization." (Emphasis supplied.)

5. There appears in United States v. Tettenburn, 186 F.Supp. 203 (D.Md.1960), a survey of publications prepared by or on behalf of Jehovah Witnesses and the Watchtower Bible & Tract Society

As of January 8, 1962, when appellant met with the board to reach an agreement upon civilian work in lieu of induction, appellant's secular work had increased to as much as 50 hours per wee'· and his ministerial activities had increased to as much as 25 hours per week, two to five of which were spent in house to house preaching. His allotment of time to ministerial activities would not be curtailed by the civilian employment to which he was assigned. He spoke of two hardships which the civilian work would impose upon him: the inability to work as a salesman and the inability to choose his hours of performing ministerial duties. Under such circumstances the board would have been justified in concluding that appellant's work as a minister was still not vocational. Furthermore, on January 8, 1962, the local board was under no duty to reopen and consider anew the classification of appellant since appellant made no written request for a reopening, and since reopening does not follow automatically from such a request when made. 32 C.F.R. § 1625.2; Shaw v. United States, 264 F.2d 118 (9th Cir. 1959).

Turning now to appellant's constitutional argument, a protracted discussion is not necessary to point out that the Thirteenth Amendment is not violated by a requirement to perform work at the Los Angeles County Department of Charities on the ground that the institution is not a federal agency,[6] the activities of said institution being related to the national interest and therefore competent for civilian employment in lieu of induction.[7] We find no merit in appellant's argument that we should overrule our decision in Howze v. United States,

which state the understanding which those related groups have concerning the ministerial exemption. The publications discussed in that case not only reveal that "full-time" as opposed to "part-time" devotion to ministerial duties is regarded as vital, but also suggest the number of hours which those groups feel should govern the determination of classification.

272 F.2d 146 (9th Cir. 1959), where we said, at p. 148:

"The appellant also urges that the Thirteenth Amendment to the Constitution prohibits a civilian labor draft in peacetime, absent a national emergency. He mis-states the case. Compulsory civilian labor does not stand alone, but is the alternative to compulsory military service. It is not a punishment, but is instead a means for preserving discipline and morale in the armed forces. The power of Congress to raise armies, and to take effective measures to preserve their efficiency, is not limited by either the Thirteenth Amendment, or the absence of a military emergency."

Accordingly, the judgment of conviction is affirmed.

6. United States v. Niles, 122 F.Supp. 382 (N.D.Cal.1954), affirmed 220 F.2d 278 (9th Cir. 1955), cert. den. 349 U.S. 939, 75 S.Ct. 784, 99 L.Ed. 1267 (1955).

7. Id.; Yaich v. United States, 283 F.2d 613 (1960).