**Petition of Private Albert J. EVEN, Jr., 2055010, USMC, Petitioner,**

**v.**

**Honorable Clark M. CLIFFORD, Secretary of Defense; Honorable P. R. Ignatius, Secretary of the Navy; General Leonard F. Chapman, Commandant of the Marine Corps; Lieutenant General Lewis B. Hershey, National Director, Selective Service System; Major General Lewis Fields, Commanding General, Marine Corps Base, Camp Pendleton, California; Colonel R. W. Anderson, Commanding Officer, Base Staging Battalion, Camp Pendleton, California, Respondents.**

**No. 68-132-S.**

United States District Court
S. D. California.

July 25, 1968.

2. This clause provides:
"(6) any other reason justifying relief from the operation of the judgment. * * *"

Kenneth A. Barwick, of Davies, Barwick & Knowlton, Lemon Grove, Cal., for petitioner.

Raymond F. Zvetina, Asst. U. S. Atty., San Diego, Cal., for respondents.

MEMORANDUM OF OPINION AND DECISION

EDWARD J. SCHWARTZ, District Judge.

FACTS

This is a petition for a writ of habeas corpus and for injunctive relief and an action for a judgment declaring invalid orders issued petitioner under date of 19 October, 1967 assigning him to involuntary active duty for a period of 18 months in the United States Marine Corps.

On April 4, 1964, petitioner enlisted in the United States Marine Corps Reserve under the Six Months Training Program then in effect. Petitioner thereafter became a member of the Ready Reserve assigned to 2nd Military Police Battalion, United States Marine Corps Reserve, New Orleans, Louisiana.

Paragraph 40 of petitioner's enlistment contract provides as follows: "I understand that upon enlistment in the Reserve of the United States Marine Corps, or upon transfer or assignment thereto, I may not be ordered to active duty without my consent except in time of war, or when in the opinion of the President a national emergency exists, or when otherwise prescribed by law, and that I may be required to perform active duty during such periods."

At the time of enlistment, Petitioner also signed a statement of understanding which provides in part as follows: "g. I FURTHER UNDERSTAND that if I fail or refuse to perform the training duties required, I may be ordered without my consent to perform not to exceed 45 days of additional active duty for training, or I may have my draft delay cancelled, or my draft deferment cancelled, and if so cancelled, I may be inducted by the Selective Service System prior to the induction of other persons liable therefor."

On February 16, 1967, Petitioner submitted a request for discharge by reason of conscientious objection pursuant to MCO 1306.16A. (Petitioner's Exhibit "A"). In June, 1967, Petitioner was advised that his application had been disapproved by the Commandant of the United States Marine Corps. (Petitioner's Exhibit "C".)

Petitioner refrained from attending scheduled drills of his Reserve unit after July 9, 1967, allegedly due to his conscientious objection. On September 6, 1967, Petitioner's then Commanding Officer forwarded to Commandant of the United States Marine Corps a recommendation for assignment of Petitioner to active duty until his total service on active duty and active duty for training equals 24 months. The order assigning Petitioner to involuntary active duty for 18 months was subsequently issued. (Petitioner's Exhibit "D".)

Cited as authority for the order was Public Law 90–40. Enacted on June 30, 1967, 10 U.S.C. § 673a provides in part:

"(a) Notwithstanding any other provision of law, the President may order to active duty any member of the Ready Reserve of an armed force who—

(1) is not assigned to, or participating satisfactorily in, a unit of the Ready Reserve;

(2) has not fulfilled his statutory reserve obligation; and

(3) has not served on active duty for a total of 24 months.

(b) A member who is ordered to active duty under this section may be required to serve on active duty until his total service on active duty equals 24 months. * * *"

Having failed to report for active duty, petitioner was apprehended by military authorities on February 19, 1968 and subsequently transported to Camp Pendleton, California. A military charge for unauthorized absence from November 21, 1967 to February 10, 1968 remains pending. Petitioner is presently detained in the brig at Camp Pendleton by virtue of his own choice.

DENIAL OF CONSCIENTIOUS OBJECTOR APPLICATION

One issue raised is whether the Marine Corps denied petitioner's application for

discharge by reason of conscientious objection without due process of law under the Fifth Amendment.

This issue has become moot. Petitioner's application for discharge is currently being reconsidered by the Marine Corps pursuant to directive 1300.6 promulgated by the Department of Defense subsequent to the application of February 16, 1967.

DEPRIVATION OF CONTRACT RIGHTS

The principal remaining issue is whether petitioner's call to involuntary active duty for 18 months pursuant to Public Law 90-40, 10 U.S.C. § 673a, deprived petitioner of valuable contract rights without due process of law.

A valid and enforceable contract between this enlisted marine and the United States was created by virtue of petitioner's enlistment in the United States Marine Corps Reserve. United States v. Grimley, 137 U.S. 147, 11 S.Ct. 54, 34 L.Ed. 636 (1890); McCord v. Page, 124 F.2d 68 (5th Cir., 1941). It must be determined how Public Law 90-40 affected that contract.

Public Law 90-40 was intended by Congress to assure the Reservist of more equitable treatment than formerly in the fulfillment of his military obligation. See 1 U.S.Cong. and Admin.News, 1967, p. 1345. It requires a delinquent Ready Reservist to serve on active duty until his "total service * * * equals 24 months." Moreover, the law requires consideration of "family responsibilities" and "employment necessary to the maintenance of the national health, safety or interest" before ordering a reservist to involuntary active duty by reason of unsatisfactory participation in a unit of the Ready Reserve.

Considering the delinquent reservist's liability for involuntary active duty under the law effective at the time of the subject contract, Public Law 90-40 evidently enhances petitioner's position. Public Law 90-40 did not eliminate 10 U.S.C. § 270(b). This statute authorizes 45 days involuntary active duty for unsatisfactory drill participation. Application of this requirement to "prior service obligors" is discretionary. Winters v. United States, D.C., 281 F.Supp. 289, 293, citing 32 C.F.R., § 100.3(c).

By virtue of 50 U.S.C.App. § 456(c) (2) (D), petitioner, as a delinquent reservist, was also subject to induction into the "armed forces of which such reserve component is a part * *." Thus, Public Law 90-40 did not alter petitioner's obligation to perform involuntary active duty with the Marine Corps. Moreover, § 456(c) (2) (D) does not expressly credit the delinquent reservist for prior active duty as does § 673a. Thus, under the law in effect upon enlistment, Petitioner might be required to serve the customary 24 month induction period in addition to prior active duty performed while a member of the Ready Reserve.

By virtue of Public Law 90-40 a delinquent reservist is ordered to involuntary active duty without induction by the Selective Service System. It remains to be considered whether Petitioner was deprived of substantial contract rights by elimination of the induction process.

In United States v. Lonstein, 370 F.2d 318 (2d Cir., 1966) the court described the Local Draft Board's function while inducting a delinquent reservist as solely ministerial. The Local Board merely "bring(s) into active service a soldier who had already enlisted and whose reserve status had been terminated; the Regulations as to the right to a hearing with respect to a reclassification or refusal to reopen one were thus inapplicable." 370 F.2d at 320; United States v. Smith, 266 F.Supp. 309 (D. Montana, 1967).

A recent decision of the 10th Circuit held that a delinquent reservist is entitled to have his Local Draft Board investigate his claim of conscientious objection before induction. Quaid v. United States, 386 F.2d 25 (10th Cir., 1967). The *Quaid* rationale is that since Congress has exempted a conscientious objector from service in the armed forces

by virtue of 50 U.S.C.App. § 456(j), the local board should have considered and disposed of Quaid's claim before sending him an induction notice. Otherwise the local board "would violate the emphatic, imperative provision of § 456(j) that a conscientious objector shall not be required to serve in the armed forces." 386 F.2d at 29.

However, the Quaid case appears distinguishable. There is authority for the proposition that § 456(j) applies only to those not yet members of the armed forces. Brown v. McNamara, 263 F. Supp. 686 (D.N.J., 1967), affirmed 387 F.2d 150 (3rd Cir., 1967), Cert. denied Brown v. Clifford, 390 U.S. 1005, 88 S.Ct. 1244, 20 L.Ed.2d 105 (April 2, 1968); Chavez v. Fergusson, 266 F.Supp. 879 (N.D.Cal., 1967); See also Petition of Green, 156 F.Supp. 174 (S.D.Cal., S.D., 1957).

In the last three cases cited the plaintiffs sought exemption by virtue of § 456(j) while on active duty. A reservist although not on active duty is clearly distinguishable from an inductee being processed by the Selective Service System. The reservist has previously entered into a contract of enlistment which has changed his status to that of a soldier. In re Grimley, 137 U.S. 147, 11 S.Ct. 54, 34 L.Ed. 636 (1890); Bell v. United States, 366 U.S. 393, 81 S.Ct. 1230, 6 L.Ed.2d 365 (1960). This status continues until discharged. United States v. Moses, 138 F.Supp. 799 (D. N.J., 1956). Moreover, the enlistee has voluntarily submitted himself to military authority by virtue of his enlistment while the inductee has not. See Noyd v. McNamara, 267 F.Supp. 701 (D.Colo., 1967), affirmed 378 F.2d 538 (10th Cir., 1967), Cert. denied 389 U.S. 1022, 88 S.Ct. 593, 19 L.Ed.2d 667 (1967); Chavez v. Fergusson, Supra.

Further, the delinquent reservist, who claims exemption by reason of conscientious objection, has an available administrative remedy by virtue of Department of Defense directive 1300.6. To hold that the Local Draft Board is also required to consider his claim would be to afford the reservist the benefit of both systems, i. e., the military and the Selective Service procedures. Congress has not so specified.

The *Lonstein* interpretation of the delinquent reservist's status appears the better view. Consequently, petitioner was not deprived of any substantial contract rights by Public Law 90-40 which eliminated the role of the Local Draft Board in ordering a delinquent reservist to involuntary active duty.

Under the circumstances herein presented, there is little basis for upholding petitioner's contention that the government is strictly bound by the enlistment contract and the Statement of Understanding. Congress has the power to declare war and provide for the common defense of the nation. U.S.Const., Art. I, § 8. These powers necessarily carry with them the power to say who shall serve in the armed forces and under what circumstances. Bertelsen v. Cooney, 213 F.2d 275 (5th Cir., 1954). The power of Congress to preserve the efficiency of the armed forces is not limited by the absence of a military emergency. Badger v. United States, 322 F.2d 902 (9th Cir., 1963).

Public Law 90-40 appears within the war powers afforded Congress because it clearly provides a more efficient procedure for processing delinquent reservists. Under Public Law 90-40 petitioner has not been deprived of any substantial rights under his enlistment contract. In fact, petitioner's position has been improved for the reason previously noted. To hold the government strictly bound by the enlistment contract in this case would indirectly fetter the power of Congress to enact uniform and practical regulations for the administration of the armed forces. See Winters v. United States, 281 F.Supp. 289 (E.D.N.Y., 1968), affirmed 390 F.2d 879 (2nd Cir., 1968) (Per Curiam).

Plaintiff's challenge to the validity of the orders assigning him to involuntary active duty is without merit.

It is ordered that the application for a writ of habeas corpus and motion for temporary and permanent injunctive relief is denied. It is further ordered that petitioner's complaint for declaratory judgment and mandamus be and it is hereby dismissed.