Darwin Earl SCHULTZ, Petitioner,

v.

Honorable Clark CLIFFORD, Secretary of Defense, and the Commanding Officer of Fort Leonard Wood, Missouri, the Sheriff of Hennepin County, and the agent in charge of the office of the F. B. I. in Minneapolis, Minnesota, Respondents.

No. 4–68–Civ. 290.

United States District Court
D. Minnesota,
Fourth Division.

Oct. 22, 1968.

Chester A. Bruvold, Minneapolis, Minn., for petitioner.

Neal J. Shapiro, Asst. U. S. Atty., Minneapolis, Minn., for respondents.

## MEMORANDUM

LARSON, District Judge.

Petitioner enlisted in the Army National Guard of Minnesota on December 28, 1963. He served satisfactorily until February of 1967 when he decided that he could no longer participate in the required National Guard drills. This decision was based on petitioner's conscientious objection to killing and war. Petitioner has not participated in any National Guard activities since February of 1967.

On February 17, 1967, the commanding officer of petitioner's unit sent a DD form 44 to petitioner's Selective Service Local Board indicating that petitioner had ceased to serve satisfactorily as a member of the National Guard. A similar form was sent on October 4, 1967.

After receipt of the February 17th form, petitioner's Local Board withdrew his I-D classification and reclassified him I-A. Subsequent to being reclassified petitioner applied to his Local Board for classification as a conscientious objector. His application was denied and petitioner filed an appeal. On September 15, 1967, petitioner was notified that since his induction was not imminent his appeal would not be submitted to the appeal board until 120 days prior to his probable induction. No further action has been taken on this appeal.

In April of 1967, petitioner talked to his commanding officer about being discharged from the National Guard as a conscientious objector but was unable to "communicate" with him. On or about July 26, 1967, petitioner wrote to his National Guard unit requesting confirmation of his discharge from the National Guard and asking for a discharge if one had not already been granted. He also requested information on how to apply for conscientious objector status. In August of 1967 petitioner again wrote to his unit commander and the State Adjutant General requesting a discharge and a DA form 1049 in order to apply for discharge as a conscientious objector.

On August 14, 1967, a letter was sent to petitioner informing him that the appropriate forms for application were available at the Armory in Mankato and that it was necessary for him to come to Mankato to clear his records and to be informed of his rights. Petitioner denies receiving this letter. From the record it appears that from September of 1967 until January 2, 1968, petitioner had no further contact with the National Guard. On January 2, 1968, petitioner received orders to report for active duty on January 17, 1968, at Fort Leonard Wood, Missouri, for a period of one year, six months, and sixteen days. On January 9, 1968, petitioner wrote to the Headquarters Fifth Army, Fort Sheridan, Illinois, requesting a rescission and postponement of his "induction notice" until his application for discharge had been processed.

Petitioner also contacted his attorney and a Mr. Sherk, the Executive Secretary of the National Service Board for Religious Objectors, in Washington, D.C. Mr. Sherk contacted a Mr. Kenneth B. Haggett of the National Guard Office in Washington, who apparently assured Mr. Sherk that petitioner's order to active duty would be delayed or cancelled until

petitioner's application for discharge was processed.

On or about February 1, 1968, petitioner received a telegram informing him that the order of January 2, 1968, had not been cancelled. On the 9th of February petitioner received in the mail his honorable discharge from the Minnesota National Guard with the effective date of January 16, 1968. On May 30, 1968, an Absentee Wanted Form was issued, and on August 16, 1968, petitioner was arrested as a deserter.

Petitioner raises three issues in his petition for a writ of habeas corpus. First, petitioner argues that his application for discharge as a conscientious objector must be processed by the proper authorities before there can be any order for active duty or participation inconsistent with his claimed beliefs.

Second, petitioner argues that the National Guard returned jurisdiction over petitioner to the Selective Service System when it reported that petitioner was no longer participating satisfactorily.

Third, petitioner argues that his Enlistment Agreement provides for sanctions in the event of failure to serve satisfactorily and that an order to active duty for more than forty-five days is a violation of his agreement.

Petitioner's first argument is based on paragraph 6 of Army Regulation 635–20, which provides:

"[A]n individual who applies for discharge based on conscientious objection will be retained in his unit and assigned duties providing the minimum conflict with his professed beliefs

pending a final decision on his application * * *."

This regulation applies only to members of the Army on active duty. The applicable regulation is Cir. 135–25 which covers members of reserve components. This regulation does not provide for release from conflicting duties. For this reason Cir. 135–25 is not a bar to petitioner's call to active duty, even assuming that a proper application had been made.[1]

Petitioner's second argument is based in part upon Mader v. Clifford, No. 48612 (N.D.Calif. July 26, 1968). In *Mader* plaintiff was certified to his draft board as an unsatisfactory participant in the reserves while his application for a conscientious objector discharge was being processed. Petitioner was reclassified I-A by his draft board. After his application for discharge was disapproved, plaintiff was certified for priority induction as an unsatisfactory participant in the reserves. Subsequently plaintiff was ordered to active duty by the Marine Corps for a period of twenty months. Plaintiff refused to obey this order and was declared a deserter. The District Court stated:

"[A]ssuming the Marine Corps had a choice to certify plaintiff to his draft board as an unsatisfactory participant or to order him to active duty as an unsatisfactory participant, once it chose to certify him to the draft board as an unsatisfactory participant, it could not deny him the procedural rights of review and appeal of his I-A classification. Therefore, the subsequent order to report for active duty would be invalid * * *."

1. The Court has not passed on the validity of petitioner's application for a discharge based on conscientious objection, for the reason that it appears that a proper application has not been filed. Both of the regulations concerning conscientious objection discharges require extensive information, references, interviews, and counseling sessions. If petitioner wishes to maintain his position that the two letters of August and September of 1967 constitute an application for dis-

charge, that is his privilege. However, it is the Court's opinion that an application based on the information contained therein would be denied. The Court holds that petitioner's call to active duty is not barred by Cir. 135–25 and does not pass on the issue of whether his application is sufficient or whether petitioner must be "assigned to duties providing a minimum conflict with his professed beliefs" when he is placed on active duty.

Here petitioner was never certified for priority induction.

■ Under 50 U.S.C. App. § 456(c)(2) (C) petitioner was not exempt from "registration or training [or] service by induction" under the Universal Military Training and Service Act because he was a member of the National Guard. He was, however, eligible to be placed in the I-D class for National Guard members who are participating satisfactorily. 32 C.F.R. § 1622.13. Because he was no longer eligible to be placed in this category, petitioner was reclassified by his Local Board. That this was a separate process from being certified for priority induction may be inferred by this reclassification. Priority induction is governed by 32 C.F.R. § 1631.8, which provides that any person who is certified for induction "shall be ordered to report for induction by the local board regardless of the class in which he is classified and *without changing his classification.*" [Emphasis added.] This regulation makes reclassification unnecessary if the person is to be inducted for failure to satisfactorily perform his National Guard duties. Since petitioner was not certified for priority induction, the *Mader* case does not apply and the petition cannot be granted on these grounds.

Petitioner also argues that his discharge from the National Guard ended any obligation he may have had to the Armed Forces and returned jurisdiction over him to the Selective Service System. This argument is based on the fact that the Enlistment Record which petitioner signed contains two oaths of enlistment—one for service in the National Guard and another for service in the Regular Army or Army Reserve. Petitioner signed only the National Guard oath. This oath provides:

"I do hereby acknowledge to have voluntarily enlisted this 28th day of December, 1963, in the Army National Guard of the State of Minnesota and as a Reserve of the Army with membership in the Army National Guard of the United States for a period of

(6) six years under the conditions prescribed by law, unless sooner discharged by proper authority."

Petitioner's Enlistment Agreement also provides for service as a Reservist. In addition, 10 U.S.C. § 269(b) provides that "[T]he units and members of the Army National Guard of the United States * * * are in the Ready Reserve of the Army * * *."

On the basis of petitioner's Enlistment Record, Enlistment Agreement, and § 269(b) it is clear that petitioner was serving in the dual capacity of National Guard member and Ready Reservist. It is also clear that petitioner's discharge from the National Guard did not relieve him of his Ready Reserve obligation, but was only for the purpose of giving jurisdiction over him to the Ready Reserve as set forth in Cir. 135–10 para. 13(b). Paragraph 13(b) provides:

"State adjutants general will identify to the appropriate area commander those ARNGUS members who are to be ordered to active duty as Reserves of the Army. Members so identified will be discharged from their ARNG status by the State Adjutant General, effective the day prior to the date the member is scheduled to report to active duty."

Petitioner's third argument is that the sanctions for unsatisfactory participation in the Army National Guard of Minnesota are limited by his Enlistment Agreement which states:

"If in any year I fail to perform satisfactorily any of the requirements set forth above, I can be ordered to perform active duty for training for a maximum of 45 days or be reported to Selective Service for immediate induction."

Petitioner was ordered to active duty pursuant to 10 U.S.C. § 673a, enacted June 30, 1967, which provides:

"(a) Notwithstanding any provision of law, the President may order to active duty any member of the Ready Reserve of an armed force who—

(1) is not assigned to, or participating satisfactorily in, a unit of the Ready Reserve;

(2) has not fulfilled his statutory reserve obligation; and

(3) has not served on active duty for a total of 24 months.

"(b) A member who is ordered to active duty under this section may be required to serve on active duty until his total service on active duty equals 24 months. If his enlistment or other period of military service would expire before he has served the required period under this section, it may be extended until he has served the required period."

Petitioner claims that the application of § 673a to him was in violation of his Enlistment Agreement and deprived him of valuable contract rights without due process of law, since he had enlisted prior to its enactment.

The applicability and constitutionality of § 673a has been discussed in a series of recent cases involving the call to active duty of reservists for disciplinary and other reasons. Winters v. United States, 281 F.Supp. 289 (E.D.N.Y.1968), aff'd, 390 F.2d 879 (2d Cir. 1968); Gion v. McNamara, Civil No. 67–1963–S (C.D. Calif. January 8, 1968); Fox v. Brown, 286 F. Supp. 855 (S.D.N.Y.1968); Ali v. United States, 289 F.Supp. 530 (C.D. Calif. July 2, 1968); Pfile v. Corcoran, 287 F.Supp. 554 (D.Colo. July 19, 1968); Even v. Clifford, 287 F.Supp. 334 (S.D. Calif. 1968); Morse v. Boswell, 289 F. Supp. 812 (D.Md. August 6, 1968).

■ In both *Winter* and *Fox* the enlistment contract contained a provision which could be interpreted as subjecting the enlistee to the effect of subsequently enacted legislation. Petitioner's Enlistment Agreement contains no such language [2] and for this reason these cases are not directly in point. *Boswell* and *Ali* involved the call up of units of reservists and unassigned reservists, respectively, and therefore are not directly in point.

In *Gion* a reservist who had enlisted prior to June 30, 1967, was ordered to active duty for a period of sixteen months for unsatisfactory participation in the Ready Reserve pursuant to § 673a. The Court held:

"1. Petitioner's status as Ready Reservist is based upon contract. In accordance with said contract Petitioner may not be ordered without his consent to perform more than forty-five (45 days of additional duty for training for unsatisfactory participation in the Ready Reserve.

"2. The ordering of Petitioner to involuntary active duty for more than forty-five (45) days because of unsatisfactory participation in the Ready Reserve, pursuant to authority derived from * * * [10 U.S.C. § 673a], constituted a violation of Petitioner's enlistment contract, and application of said Public Law as to Petitioner constituted a violation of the due process clause of the Fifth Amendment to the Constitution of the United States."

■■ Petitioner relies upon *Gion* to support his claim that his order to active duty was in violation of his Enlistment Agreement and the due process clause.[3]

2. Petitioner's oath of enlistment contains the words "under the conditions prescribed by law." In Pfile v. Corcoran, 287 F.Supp. 554 (D.Colo. July 19, 1968), the Court recognized that this oath, if it constituted the contract, might be construed to incorporate future changes in the law. However, the Court held that the "specific, detailed Statement of Acknowledgment [Enlistment Agreement] constituted the enlistment contract, rather than the brief, more general oath." To the extent that the relationship be-

tween petitioner and the armed forces is based on contract, this is the proper conclusion. Therefore this Court must look to the Enlistment Agreement.

3. *Gion* is of doubtful precedential value since on very similar facts the Court in *Winters* held that § 673a was not a violation of the enlistment contract. In *Winters* the Court stated:

"Both the enlistment contract and the Statement of Understanding contemplate that the obligations which the en-

However, the *Gion* opinion fails to deal with two important questions concerning the application of § 673a. First, does § 673a deprive a reservist of any substantial contract rights; and, second, if it does, may these rights be abrogated by the sovereign, constitutionally, in the exercise of a paramount power?

The Court in Even v. Clifford, *supra,* answered the first question negatively, noting that a reservist reported to the Selective Service for priority induction may be required to serve twenty-four months on active duty, whereas under § 673a the delinquent reservist is given credit for active duty already served. The Court stated:

> "Under [§ 673a] petitioner has not been deprived of any substantial rights under his enlistment contract. In fact, petitioner's position has been improved for the reasons previously noted. To hold the government strictly bound by the enlistment contract in this case would indirectly fetter the power of Congress to enact uniform and practical regulations for the administration of the armed forces." 287 F.Supp. at 338.

The Court in Pfile v. Corcoran answered the second question affirmatively. The Court stated:

> "Under certain circumstances the legislature has power, as an attribute of sovereignty, to enact laws which alter existing contracts, whether made between private parties or between the Government and private citizens. See City of El Paso v. Simmons, 379 U.S. 497, 85 S.Ct. 577, 13 L.Ed.2d 446 (1965).
>
> \*   \*   \*   \*   \*   \*
>
> "\*   \*   \* [A]brogation of contracts by the legislature is permissible where the abrogation occurs through the exercise of some paramount power of the sovereign, and the abrogation operates to further the ends sought to be achieved in the exercise of this power.
>
> \*   \*   \*   \*   \*   \*
>
> "The present statute can be regarded as falling within the 'wide discretion' which Congress possesses in the exercise of its powers 'to declare war,' (Const., Art. I, sec. 8, cl. 11), 'to raise and support armies,' (Const., Art. I, sec. 8, cl. 12), and 'to make rules for the government and regulation of the land and naval forces' (Const., Art. I, sec. 8, cl. 14). These are collectively known as the War Powers, and the statute appears validly applicable to petitioner, even if it contravenes his enlistment contract. It is unnecessary to determine whether the present con-

listed man undertakes include not only additional active duty imposed in a national emergency or in time of war but also additional active duty 'otherwise prescribed by law' or 'as the law may require.' Neither the enlistment contract nor the Statement of Understanding says in so many words that it means duty prescribed by law whether already enacted or hereafter passed, but that is the evident and necessary meaning of any language so used in such instruments. Were such instruments construed otherwise they would in effect fetter and embarrass the power of the President and Secretary of Defense to adopt uniform and practical regulations for the administration of the armed forces and the Ready Reserve, and could indeed operate as a fetter upon Congress itself, which

would have to take action in contemplation of the existence of a large number of such agreements in force at any one time, and which it would be only appropriate, even if not necessary, that Congress should consider in enacting new law."

Moreover, the rationale of the *Gion* case has not been followed by the District Court which decided it. In *Ali* the Court stated:

"[A] military enlistment contract is not an insulating document which legally prevents the Government of the United States from recalling to active duty an enlistee pursuant to an act of Congress which was passed after the date of enlistment although such recall is not expressly provided for in the terms of his enlistment contract; and

flict is a state of war. It is sufficient to note that the condition is scarcely a state of peace, and that the action of Congress is in the interests of national security. Finally, we are constrained to hold that a contract such as the present one always stands in the shadow of the exercise by Congress of positive paramount sovereign powers."

In this case, as in *Even*, since petitioner was subject to priority induction for twenty-four months under his Enlistment Agreement and for active duty for extended periods under other statutes, see, *e. g.*, 10 U.S.C. §§ 672(a) and 673(a), § 673a does not deprive him of any substantial contract rights without due process of law. In addition, assuming the rationale of *Even* does not apply, the rationale of *Pfile* does, and petitioner's contract must give way before the exercise by Congress of the War Powers.

For the above stated reasons petitioner's application for a writ of habeas corpus must be denied.

that in this case, the recall of the plaintiffs to active duty was not tied to their respective enlistment contracts

but was predicated upon Congress' right to raise an Army, as well as [§ 673a] * * *."