In the Matter of the Application of Enrique **COLON-RIOS**, Petitioner,

v.

Bert **PERRIN**, Commanding Officer, United States Army in Puerto Rico; and Jack K. Sterne, Commanding Officer, Command Support Detachment, Third Army, Respondents.

Civ. No. 705–69.

United States District Court
D. Puerto Rico.

Dec. 19, 1969.

Olaguibet A. López-Pacheco, Hato Rey, P. R. and Luis M. Escribano-Díaz, Santúrce, P. R., for petitioner.

Blas C. Herrero, Jr., U. S. Atty., San Juan, P. R., for respondents.

### ORDER AND OPINION

FERNANDEZ-BADILLO, District Judge.

Petitioner, Enrique Colon-Rios, has applied for a Writ of Habeas Corpus directing his release from the Armed Forces of the United States on the grounds that he is a civilian and not subject to the jurisdiction of the United States Army or any other branch of the military.

Enrique Colon-Rios was apprehended by agents of the Federal Bureau of Investigation on October 10, 1969 at his home in Comerio, Puerto Rico, pursuant to a request from the Armed Forces of the United States, for being absent without proper authority from his organization. After his arrest, Enrique Colon-Rios was delivered to the Army authorities at Fort Buchanan, Puerto Rico, for processing and transportation to Fort Sill, Oklahoma.

The relevant events leading to petitioner's arrest and delivery to the military authorities are summarized as follows:

On November 14, 1965, petitioner voluntarily enlisted in the National Guard of Puerto Rico. Petitioner admitted in his petition that during the period July 24, 1967 to June 7, 1968, he missed at least six (6) drills. As a result of these absences, petitioner was determined an unsatisfactory participant by his National Guard unit. Petitioner was discharged from the National Guard on September 17, 1968. The discharge was solely for the purpose of giving jurisdiction over the petitioner to the Ready Reserve as set forth in Army Regulation No. 135-91, paragraph 14b,[1] thus enabling the Ready

---

1. "Order to active duty. * * *. b. *Discharge of enlisted ARNGUS personnel.* State adjutants general will identify to the appropriate area commander those ARNGUS members who are to be ordered to active duty as Reserves of the Army. Members so identified will be discharged from their ARNG status by the State adjutant general, effective the day prior to the date the member is scheduled to report to active duty."

**1316**

Reserve to call the petitioner to active duty for unsatisfactory participation with his National Guard unit.

On August 16, 1968, petitioner was mailed Letter Orders Number A-08-44, from Department of the Army, Headquarters, U.S. Army Forces Southern Command-Puerto Rico, Fort Buchanan, Puerto Rico 00934.[2] These Orders were received by the petitioner on August 22, 1968. Petitioner furnished a copy of these Orders to Local Selective Service Board No. 22, Comerio, Puerto Rico.[3] Under the terms of these Orders, petitioner was ordered to active duty with the Armed Forces of the United States for a period of 19 months and 7 days. He was assigned to 2d Battalion, First Field Artillery, Fort Sill, Oklahoma. The effective date of these Orders was September 18, 1968, at which time petitioner became a member of that unit and carried on its rolls. Petitioner's reporting date to said unit was September 20, 1968; thus, petitioner was allowed two days travel time between his home in Puerto Rico and his new unit of assignment. The authority for issuing these Orders is cited as P.L. 89-687,[4] and Paragraph 12, Army Regulations No. 135-91. Petitioner did not comply with the Orders and failed to report on the date he was scheduled to do so.

On July 26, 1968, prior to the receipt of said Orders, petitioner submitted to Local Selective Service Board No. 22, a verified certification of his marriage certificate and a verified certification of the birth certificate of his son.[5]

On the same date (July 26, 1968), petitioner was sent SSS Form 127 (Current Information Questionnaire) which he completed and returned on the same date. In said questionnaire he indicated that he was a member of Company B, 130th Engineer Battalion, Puerto Rico National Guard with Service No. ER 29136961.

On July 30, 1968, Local Selective Service Board No. 22, Comerio, Puerto Rico, received DD Form 44 entitled "Record of Military Status of Registrant", dated July 10, 1968, from Company B, 130th Engineer Battalion, that stated in Part XII, "Remarks" section, as follows: "Unsatisfactory participant who is being reported for order to active duty under the provisions of Puboic Law 89-687." Upon receipt of this form, Local Selective Service Board No. 22 forwarded the Selective Service file of petitioner to the Selective Service Headquarters, Commonwealth of Puerto Rico, for instructions.

On August 8, 1968, the file was returned by the Selective Service Headquarters with a recommendation that petitioner be retained in his present classification, and that if within the next 90 days no word was received that petitioner had entered upon active duty, the local board could again return the file to Selective Service Headquarters.

On September 23, 1968, the father of petitioner appeared at Local Selective Service Board No. 22 to notify that his

---

2. A copy of Orders Number A-08-44, dated August 16, 1968, from Department of the Army, Headquarters, U.S. Army Forces Southern Command-Puerto Rico, Fort Buchanan, Puerto Rico, was admitted into evidence as Exhibit A.

3. Selective Service file of petitioner was admitted into evidence by stipulation by both parties.

4. The Orders issued by the Department of Army, Headquarters, U.S. Army Forces Southern Command-Puerto Rico, are based on 10 U.S.C. § 673a but recite in reliance P.L. 89-687. In fact, P.L. 89-687, Section 101, was effective only until June 30, 1968. The substance of this Law, insofar as it effects the petitioner in this case, was reenacted on June 30, 1967, as 10 U.S.C. § 673a. Additionally, Army Regulation No. 135-91, Paragraph 12, which is also mentioned in the Orders, cites 10 U.S.C. § 673a as authority for the order to active duty. The error in the order in citing P.L. 89-687 insofar as it effects the petitioner in this case, is harmless. See Winters v. United States, 281 F.Supp. 289 (D.C. N.Y.1968).

5. The verified certification of marriage certificate indicates that petitioner was married on December 22, 1966. The verified certification of birth certificate shows that a son was born to petitioner on July 12, 1967.

son was hospitalized at University Hospital, Rio Piedras, Puerto Rico. He completed SSS Form 119, "Report of Oral Information." [6]

On November 6, 1968, the Selective Service file of petitioner was again forwarded to Selective Service Headquarters for additional instructions. This file was returned by Selective Service Headquarters on September 15, 1969.[7]

On the same date (September 15, 1969), Local Selective Service Board No. 22 sent petitioner SSS Form 127, "Current Information Questionnaire" which was returned completed by petitioner on September 22, 1969.

On September 23, 1969, petitioner was reclassified III-A, and on September 25, 1969, SSS Form 110 (Notice of Classification) was sent to him, notifying that he had been reclassified III-A.

On October 16, 1969, petitioner filed his petition for Writ of Habeas Corpus.

It is undisputed that the petitioner voluntarily enlisted in the National Guard of Puerto Rico, and that in a one-year period he missed at least six (6) drill periods. His absences from drill prompted the military authorities to order him to involuntary active duty due to failure to participate satisfactorily with his National Guard unit.

Title 10, U.S. Code, Section 673a, provides:

*"Section 673a. Ready Reserve: members not assigned to, or participating satisfactorily in, units*

"(a) Notwithstanding any other provisions of law, the President may order to active duty any member of the Ready Reserve of an armed force who—

"(1) is not assigned to, or participating satisfactorily in, a unit of the Ready Reserve;

"(2) has not fulfilled his statutory reserve obligation; and

"(3) has not served on active duty for a total of 24 months.

"(b) A member who is ordered to active duty under this section may be required to serve on active duty until his total service on active duty equals 24 months. If his enlistment or other period of military service would expire before he has served the required period under this section, it may be extended until he has served the required period.

"(c) To achieve fair treatment among members of the Ready Reserve who are being considered for active duty under this section, appropriate consideration shall be given to—

"(1) family responsibilities; and

"(2) employment necessary to maintain the national health, safety, or interest."

In the case of Pfile v. Corcoran, 287 F.Supp. 554 (D.C.1968), the court considered the question of whether petitioner's enlistment contract was subject to the subsequently enacted Act of Congress, 10 U.S. Code § 673a. The court, in addressing itself to the problem said (p. 559):

" * * * The terms of the statute unquestionably apply to petitioner's situation. The provision relating to the callup of reservists not satisfactorily participating in their program applies to 'any member of the Ready

---

6. Mr. Roberto Colon, father of registrant, informed that his son, Enrique Colon-Rios, was hospitalized at University Hospital, Rio Piedras, Puerto Rico, from September 4, 1968, suffering from hepatitis complicated with Bilharzia according to the doctors, and that this was the reason why his son had not reported to the Army to be enlisted.

7. The Selective Service Headquarters returned the file with recommendations that the registrant be reclassified on the basis of the evidence on record since he did not meet the requirements of Section 1622.13 of the Selective Service Regulation for an I–D Classification, and in the event Form DD 53 was received, the registrant would be eligible for a Class I–C Classification.

Reserve.' 70A Stat. 11, 161. *Winters,* supra, has so construed P.L. 89–687.

"Congressional debates indicate that one purpose of P.L. 89–687 was to provide a large pool of men who could be called to active duty without the necessity of activating whole units and without a Presidential declaration of a national emergency. This was accomplished by making men not members of units, as well as unsatisfactory participants in units, subject to callup without the necessity of reporting them to the Selective Service System. In this way they were made available for service, the protective mantle of membership in the reserve was removed, and they did not have to be put through the administrative machinery of the draft but could be activated by the reserve organization.

"Thus, the language of P.L. 89–687 makes clear that the statute was not intended to apply only to persons enlisting after its enactment. Since the statute was originally passed for a short term period (October 15, 1966— June 30, 1968), it seems obvious that it was intended to apply to persons already in the reserve, thus making a pool of currently enlisted men subject to activation.

"Nor can it be argued that Congress intended to take into consideration the lack of provision in the Army Reserve contract for subsequently passed laws. The Army Reserve would probably comprise the largest segment of the reservists available for activation under this statute. The language of the statute applies to all reserve units. If Congress intended the statute to apply only to certain branches of the service, it would have so stated.

"It follows that petitioner can be regarded as subject to 10 U.S.C. § 673a if the statute can legitimately alter the sanction provision of his contract, thereby making him subject to the sanction provided by the statute passed subsequent to his enlistment. * * *."

The court went on to say (at page 561):

" * * * The present statute can be regarded as falling within the 'wide discretion' which Congress possesses in the exercise of its powers 'to declare war,' (Const., Art. I, sec. 8, cl. 11), 'to raise and support armies,' (Const., Art. I, sec. 8, cl. 12), and 'to make rules for the government and regulation of the land and naval forces' (Const., Art. I, sec. 8, cl. 14). These are collectively known as the War Powers, and the statute appears validly applicable to petitioner, even if it contravenes his enlistment contract. It is unnecessary to determine whether the present conflict is a state of war. It is sufficient to note that the condition is scarcely a state of peace, and that the action of Congress is in the interests of the national security. Finally, we are constrained to hold that a contract such as the present one always stands in the shadow of the exercise by Congress of positive paramount sovereign powers.

"It is concluded that petitioner's contract is subject to 10 U.S.C. Section 673a; that the statute is valid as applied to him; and that the petition is without merit. The Order to Show Cause is discharged and the cause of action is dismissed."

■ From the reading of Title 10 U. S. Code § 673a, and in light of the interpretation given to that section by the case of Pfile v. Corcoran, we conclude that this section is applicable to the petitioner in the instant case.

■ Petitioner was called to active duty on September 18, 1968, that is, the day following his discharge from the National Guard of Puerto Rico. At that time, the petitioner became a member of the Armed Forces of the United States, subject to its jurisdiction.

Section 802, 10 U. S. Code, in its pertinent part, provides that:

"The following persons are subject to this chapter:

"(1) Members of a regular component of the armed forces, including

those awaiting discharge after expiration of their terms of enlistment; volunteers from the time of their muster or acceptance into the armed forces; inductees from the time of their actual induction into the armed forces; *and other persons lawfully called or ordered into, or to duty in or for training in, the armed forces, from the dates when they are required by the terms of the call or order to obey it. * * *."* (Emphasis supplied.)

The fact that petitioner failed to comply with military orders issued to him by failing to report as ordered does not mean that the United States Army authorities lost jurisdiction over petitioner.

■■ When the agents of the Federal Bureau of Investigation apprehended petitioner on October 10, 1969 due to his absence from the Armed Forces, they did it pursuant to the authority vested in them by 10 U.S. Code § 808, which provides:

"Any civil officer having authority to apprehend offenders under the laws of the United States or of a State, Territory, Commonwealth, or possession, or the District of Columbia may summarily apprehend a deserter from the armed forces and deliver him into the custody of those forces."

Thus, petitioner's apprehension and his release to the respondents for transportation to his unit of assignment at Fort Sill, Oklahoma, was valid and pursuant to law. The fact that petitioner was reclassified III-A on September 23, 1969, that is, over one year after he had been ordered to active duty, does not affect the case, since after his call to active duty the local Selective Service Board did not have jurisdiction to classify petitioner in a category inconsistent with his status as a member of the Armed Forces. Schultz v. Clifford, 303 F.Supp. 965 (D.C.1968).

It is evident from the Selective Service file of petitioner that his own actions were instrumental in obtaining from his local Selective Service Board a classification to which he was not entitled, because, although in a status of absence without leave, he was still a member of the Armed Forces of the United States and subject to its jurisdiction.

■ A review of the jurisprudence involving cases of involuntary call to active duty reveals that judicial review should be limited to determine whether the respondents have acted within their jurisdiction under valid law. In the instant case, respondents have acted pursuant to the provisions of 10 U.S. Code § 673a and under the provisions of Paragraph 12, Army Regulation No. 135-91, which establishes the procedures and policies governing satisfactory participation. Army Regulation No. 135-91, paragraph 12, in its pertinent part, provides as follows:

"*12. Unexcused absences from unit training assemblies.*

"A member failes to participate satisfactorily when he accrues in any 1-year period a total of five or more unexcused absences from scheduled unit training assemblies as computed in b and c below.

"a. A member who fails to participate satisfactorily in this respect will be ordered to active duty for a period which, when added to his prior service on active duty, active duty for training, annual field training, or full time training duty, will total 24 months."

Paragraph 12, Army Regulation No. 135-91 and Section 673a, 10 U.S. Code, provide the authority and procedure by which the Army did call petitioner to active duty. Therefore, the military authorities have acted well within their jurisdiction. Fox v. Brown, 402 F.2d 837 (2d Cir. 1968), cert. denied, 393 U.S. 1114, 89 S.Ct. 1007, 22 L.Ed.2d 120; Winters v. United States, 281 F.Supp. 289 (E.D.N.Y., 1968), aff'd 390 F.2d 879 (2d Cir. 1968). In Giardina v. Ambrose, 301 F.Supp. 326 (D.C. May 5, 1969) at page 328, the court held:

" * * * The Commanding General, First United States Army, was well within his discretion to order the petitioner to active duty and the deci-

sion is not reviewable by this Court. As stated by the Supreme Court in Orloff v. Willoughby, 345 U.S. 83, 93–94, 73 S.Ct. 534, 540, 97 L.Ed. 842 (1953), 'Judges are not given the task of running the Army * * *. The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters.' "

In light of the facts of this case and the jurisprudence bearing on the subject, this court concludes that petitioner was lawfully called to involuntary active duty, and the Army authorities acted in compliance with pertinent provisions of law and Army Regulations, and therefore, petitioner is a member of the Armed Forces of the United States and under its jurisdiction, and not a civilian as he contends in his application for Writ of Habeas Corpus.

■ From the tenor of Paragraph 6a, b and f of the Petition for Writ of Habeas Corpus, it appears that petitioner's other claim is that he is unfit for military service for medical reasons. This being the case, petitioner's application for Writ of Habeas Corpus is premature because he has failed to exhaust administrative remedies available to him within the military service.

The "Special Instructions" in Letter Orders Number A–08–44, dated 16 August 1968, which ordered petitioner to active duty, in its pertinent part, reads as follows:

"* * * U. S. Army Reception Station Commanders will determine medical fitness, if required, in accordance with Chapter 3, AR 40–501. Those medically unfit will be processed in accordance with AR 635–200. * *"

Petitioner has never made any claim that he is physically unfit for military service to the pertinent Army authorities. Since the time he was ordered to active duty, the Army medical authorities have not been afforded the opportunity to determine whether petitioner meets the medical fitness standards for retention in the service.

This Court finds that petitioner has failed to exhaust administrative remedies available to him within the military service.

In Jorge Alberto Leon Vázquez v. Commanding Officer of Fort Buchanan, et al., Civil No. 222–69, Order dated July 15, 1969, this Court stated, in addressing itself to the question whether or not petitioner had exhausted administrative remedies:

"* * * This Court will not pass on questions of jurisdiction to grant relief to persons seeking release from military service where all administrative recourses have not been explored. (Rank v. Gleszer, [D.C.], 288 F.Supp. 174; Noyd v. McNamara [D.C.], 267 F.Supp. 701).

"The Writ of Habeas Corpus is an extraordinary one and this Court is not willing to issue it until it is shown to the satisfaction of the Court that all other means of relief have been exhausted. This the petitioner has failed to do. (U. S. ex rel. Tomback v. Bullock, [D.C.], 110 F.Supp. 698) When an administrative remedy has been established, the writ of habeas corpus will not be employed to summarily bypass or interrupt such procedure. U. S. ex rel. Coltman v. Bullock, [D.C.], 110 F.Supp. 126.) * * *"

See also Arnaldo Castro López v. U. S. Army, et al., Civil No. 221–69, Order dated April 28, 1969.

Thus, in view of the foregoing, this Court concludes that petitioner is a member of the Armed Forces of the United States and subject to its jurisdiction, and that he has failed to exhaust the administrative remedies available to him within the military service.

Therefore, application for Writ of Habeas Corpus must be, and is hereby denied. The temporary Restraining Order issued on October 16, 1969 and subsequent extension thereof, is hereby set aside. It is so ordered.